**Derrick DOWNS–MORGAN, Petitioner-Appellant,**

v.

**UNITED STATES of America, Respondent-Appellee.**

No. 84–5549.

United States Court of Appeals, Eleventh Circuit.

July 23, 1985.

Nichols, Senior Circuit Judge, sitting by designation, filed concurring opinion.

Amanda Maxwell, Miami, Fla., for defendant-appellant.

Jeffrey A. Bernstein, Miami, Fla., for amicus curiae American Immigration Lawyers Assn.

Stanley Marcus, U.S. Atty., Richard H. Kamp, Jon May, Linda Collins Hertz, Asst. U.S. Atty., Miami, Fla., for plaintiff-appellee.

Before FAY and HENDERSON, Circuit Judges, and NICHOLS*, Senior Circuit Judge.

ALBERT J. HENDERSON, Circuit Judge:

Derrick Downs-Morgan appeals from an order of the United States District Court for the Southern District of Florida deny-

* Honorable Philip Nichols, Jr., U.S. Circuit Judge for the Federal Circuit, sitting by designation.

ing his petition to vacate his sentence pursuant to 28 U.S.C. § 2255 without first conducting an evidentiary hearing. Because the facts alleged in the petition warrant collateral relief, we reverse and remand for an evidentiary hearing.

Morgan, a resident of Nicaragua, was indicted in the district court for conspiracy to import marijuana in violation of 21 U.S.C. §§ 952(a), 963 (Count I) and possession with intent to distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1), 846 (Count II). According to the allegations of his petition, he originally pled not guilty to both charges, but later changed his plea to guilty on Count I after the government agreed to dismiss Count II and his attorney represented that the conviction would not subject him to deportation to Nicaragua.

On November 23, 1983, over twenty months into his three year sentence, Downs-Morgan applied for political asylum in the United States, alleging that his anticommunist views would subject him to harsh punishment or death upon his return to Nicaragua. While the request was pending, he was released on parole to the custody of the Immigration and Naturalization Service.[1]

He then learned for the first time that his drug conviction made him subject to deportation under 8 U.S.C. § 1251(a)(11), and excludable from the United States under 8 U.S.C. § 1182(a)(23). On May 29, 1984, he filed a "Petition for Writ of Coram Nobis, Motion for Leave to Withdraw Plea of Guilty and Motion to Vacate Judgment and Sentence" in the district court requesting an evidentiary hearing and alleging that his guilty plea was not entered intelligently and that he was denied effective assistance of counsel. The district court correctly treated the petition as a motion made pursuant to 28 U.S.C. § 2255,[2] see, e.g., *Wright v. United States*, 624 F.2d 557, 558 (5th Cir.1980) (section 2255 motion used to collaterally attack constitutionality of guilty plea),[3] and summarily denied it on June 14, 1984 without holding a hearing.[4]

On appeal, Downs-Morgan contends that he was deprived of due process of law because the trial court failed to apprise him of the immigration consequences of his guilty plea and because he based his plea on the erroneous representation by his attorney that he would not be subject to deportation and thus, would not be returned to Nicaragua. In addition, he urges that his attorney's advice constituted ineffective assistance of counsel.[5]

The case must be remanded to the district court for an evidentiary hearing un-

---

1. The record does not disclose whether the government has acted upon this request. Downs-Morgan states that the application for political asylum will be automatically denied, presumably pursuant to 8 U.S.C. § 1253(h)(2), should this court uphold his guilty plea.

2. The statute provides in relevant part:
 A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States ... may move the court which imposed the sentence to vacate, set aside or correct the sentence.
 28 U.S.C. § 2255.

3. In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as precedent all decisions of the former Fifth Circuit decided prior to October 1, 1981.

4. On June 20, 1984, the district court issued an order referring the matter to a magistrate for review. After Downs-Morgan filed a motion for clarification to resolve the conflict between the June 14, 1984 and June 20, 1984 orders, the court vacated the referral mandate and affirmed the former order denying the petition.

5. The arguments raised on appeal are slightly different from those argued before the district court. Downs-Morgan did not originally seek relief based on the trial judge's failure to inform him of the immigration consequences of his guilty plea. In fact, he admitted in a brief in support of his petition that it "is not the responsibility of the trial court to advise the defendant of federal deportation consequences at the time of taking a guilty plea...." Record at 50. On appeal, however, he appears to assert that Fed. R.Crim.P. 11 requires the trial judge to apprise him of the immigration consequences of the plea. Also, Downs-Morgan apparently based his arguments in the district court on his *ignorance* of the immigration consequences of his plea. On appeal, he urges that his counsel's affirmative misrepresentation is an additional important factor. We may properly consider these new arguments in our discretion. *See Singleton*

less "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; *see Fontaine v. United States,* 411 U.S. 213, 215, 93 S.Ct. 1461, 1462, 36 L.Ed.2d 169, 172 (1973) (per curiam). We must determine, therefore, whether the undisputed facts in the record and the allegations of Downs-Morgan's petition warrant collateral relief under section 2255.

## I. *Fed.R.Crim.P. 11*

■ Federal Rule of Criminal Procedure 11 requires the trial court to personally inform the defendant of certain specified rights and possible consequences before accepting a guilty plea. *See* Fed.R.Crim.P. 11(c), (d), (f).[6] Collateral relief is available for violations of Rule 11 only when the infraction is a "fundamental defect which inherently results in a complete miscarriage of justice" or an "omission inconsistent with the rudimentary demands of fair procedure." *United States v. Timmreck,* 441 U.S. 780, 783–84, 99 S.Ct. 2085, 2087, 60 L.Ed.2d 634, 638 (1979); *see also*

*Wright,* 624 F.2d at 558–59; *United States v. Crook,* 607 F.2d 670, 672 (5th Cir.1979) (per curiam).

■ The trial judge is obligated under the rule to personally disclose only those consequences of a guilty plea specifically set forth in the rule. *United States v. Dayton,* 604 F.2d 931, 937 (5th Cir.1979) (en banc) (consequences listed are "inclusive and exclusive"), *cert. denied,* 445 U.S. 904, 100 S.Ct. 1080, 63 L.Ed.2d 320 (1980). The effect of immigration status is not mentioned in the rule. Although the rule requires the court to divulge the "mandatory minimum penalty" and the "maximum possible penalty," Fed.R.Crim.P. 11(c)(1), we do not read these phrases as encompassing possible deportation or exclusion. The Advisory Committee Notes to the rule state that the "objective is to insure that a defendant knows what minimum sentence the *judge* must impose and what maximum sentence the *judge* may impose." Notes of the Advisory Committee on Rule 11, 1974 Amendment (emphasis added); *see also Michel v. United States,* 507 F.2d 461, 466 (2d Cir.1974) (the judge must assure "only that

v. *Wulff,* 428 U.S. 106, 121, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826, 837 (1976); *Roofing & Sheet Metal Services, Inc. v. LaQuinta Motor Inns, Inc.,* 689 F.2d 982, 989–90 (11th Cir.1982).

6. Fed.R.Crim.P. 11 provides in relevant part:
 (c) Advice to Defendant. Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform him of, and determine that he understands, the following:
 (1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law, including the effect of any special parole term; and
 (2) if the defendant is not represented by an attorney, that he has the right to be represented by an attorney at every stage of the proceeding against him and, if necessary, one will be appointed to represent him; and
 (3) that he has the right to plead not guilty or to persist in that plea if it has already been made, and he has the right to be tried by a jury and at that trial has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself; and

 (4) that if his plea of guilty or nolo contendere is accepted by the court there will not be a further trial of any kind, so that by pleading guilty or nolo contendere he waives the right to a trial; and
 (5) if the court intends to question the defendant under oath, on the record, and in the presence of counsel about the offense to which he has pleaded, that his answers may later be used against him in a prosecution for perjury or false statement.
 (d) Insuring That the Plea is Voluntary. The court shall not accept a plea of guilty or nolo contendere without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The court shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the attorney for the government and the defendant or his attorney.
 . . . .
 (f) Determining Accuracy of Plea. Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea.
 Fed.R.Crim.P. 11(c), (d), (f).

the punishment that *he* is meting out is understood") (emphasis in original). Furthermore, neither deportation under 8 U.S.C. § 1251(a)(11) nor exclusion under 8 U.S.C. § 1182(a)(23) is "mandatory," both matters being left to the discretion of the attorney general. *See, e.g., Johns v. Department of Justice,* 653 F.2d 884, 889 (5th Cir.1981).

■ All the courts considering the various versions of Rule 11 agree that it does not require the trial judge to apprise the defendant of the possible immigration consequences of his guilty plea. *See United States v. Russell,* 686 F.2d 35, 39 (D.C.Cir. 1982); *Garcia-Trigo v. United States,* 671 F.2d 147, 150 (5th Cir.1982); *Fruchtman v. Kenton,* 531 F.2d 946, 948–49 (9th Cir. 1976); *Michel v. United States,* 507 F.2d 461, 464–65 (2d Cir.1974); *Tafoya v. State,* 500 P.2d 247, 251 (Alaska 1972) (construing similar rule using federal precedent),[7] *cert. denied,* 410 U.S. 945, 93 S.Ct. 1389, 35 L.Ed.2d 611 (1973).

We conclude that the undisputed facts in the record and Downs-Morgan's allegations do not establish a violation of Rule 11. As a result, we need not consider whether his contentions warrant collateral relief for that reason.

**7.** In *Joseph v. Esperdy,* 267 F.Supp. 492 (S.D.N. Y.1966), although not addressing the scope of Fed.R.Crim.P. 11, the court noted that it seemed "onerous" to require a judge to explain collateral consequences such as the possibility of deportation. *Id.* at 494.

**8.** An affidavit submitted by Downs-Morgan states:

> I did inform [my] attorney ... that I could not go back to Nicaragua on the day I entered my plea. [He] replied that they would not send me back to Nicaragua and that we could see about that later.

Record at 46. We do not regard the language "we could see about that later" as a material equivocation.

The affidavit also states that the facts alleged in the accompanying petition are true. Record at 46. The petition alleges that he "would be persecuted if he returned to Nicaragua," *id.* at 42, and that if he "is deported to Nicaragua, he will be recognized immediately upon arrival in Nicaragua and will definitely be imprisoned for many years and possibly receive a penalty of death for his anti-communist acts." *Id.* at 43.

## II. *Ineffective Assistance of Counsel*

■ Downs-Morgan next contends that he was denied effective assistance of counsel in deciding to plead guilty. In his petition and accompanying sworn affidavit he alleges that, in response to a specific inquiry, his attorney misinformed him that his guilty plea would not result in his deportation. This misrepresentation, according to Downs-Morgan, greatly affected his decision whether to plead guilty because he will "certainly" be imprisoned "for many years" and "possibly" be executed upon his return to Nicaragua.[8] The issue is one of first impression.

■ "An accused who has not received reasonably effective assistance from counsel in deciding to plead guilty cannot be bound by his plea" because a plea of guilty is "valid only if made intelligently and voluntarily." [9] *Wofford v. Wainwright,* 748 F.2d 1505, 1508 (11th Cir.1984) (per curiam); *see also Ford v. Ford,* 749 F.2d 681, 683 (11th Cir.1985); *see generally Strickland v. Washington,* — U.S. —, —, 104 S.Ct. 2052, 2064–65, 80 L.Ed.2d 674, 693 (1984); *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).[10] However, the fact that "a guilty

Downs-Morgan did not submit an affidavit from his attorney corroborating the assertion in his own affidavit that he was misled by his counsel's advice. At least one court has stated that such a failure justifies dismissal. *See United States v. Santelises,* 476 F.2d 787, 790 n. 3 (2d Cir.1973). We are aware of no such rule in this circuit, however, at least where the defendant's affidavit is not contradicted by the remainder of the record. *See generally Matthews v. United States,* 533 F.2d 900 (5th Cir.1976), *cert. denied,* 429 U.S. 1121, 97 S.Ct. 1156, 51 L.Ed.2d 571 (1977); *Bryan v. United States,* 492 F.2d 775 (5th Cir.1974) (en banc), *cert. denied,* 419 U.S. 1079, 95 S.Ct. 668, 42 L.Ed.2d 674 (1974).

**9.** The fact that the trial court complied with Fed.R.Crim.P. 11 does not guarantee that the guilty plea is constitutionally valid. *See Fontaine v. United States,* 411 U.S. 213, 93 S.Ct. 1461, 36 L.Ed.2d 169 (1973) (per curiam); *United States v. Rumery,* 698 F.2d 764, 766 n. 1 (5th Cir.1983).

**10.** We do not reach the issue whether an involuntary or unintelligent guilty plea based on the advice of counsel necessarily implies that the

plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing." *McMann v. Richardson*, 397 U.S. 759, 770, 90 S.Ct. 1441, 1448, 25 L.Ed.2d 763, 773 (1970). "Counsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice...." *Wofford*, 748 F.2d at 1508.

■ To be entitled to collateral relief, the accused must "prove serious derelictions on the part of counsel sufficient to show that his plea was not, after all, a knowing and intelligent act." *Id.*, 397 U.S. at 774, 90 S.Ct. at 1450, 25 L.Ed.2d at 775; *see, e.g., Johnson v. Wainwright*, 456 F.2d 1200 (5th Cir.1972) (per curiam) (patently incorrect advice that maximum sentence was fifteen years rather than twenty years did not render guilty plea involuntary or uninformed). When "counsel has induced

defendant was denied the effective assistance of counsel.

11. The requirement that the advice upon which the guilty plea is based be "patently erroneous" distinguishes the line of cases holding that a plea based on competent, good faith advice which later turns out to be incorrect is voluntary and intelligent. *See, e.g., Tollett v. Henderson*, 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973); *Parker v. North Carolina*, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970); *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970).

12. A number of courts have held that the *trial judge's* failure to inform the defendant of the immigration consequences of his guilty plea does not render the plea constitutionally deficient. *See, e.g. United States v. Santelises*, 476 F.2d 787, 789 (2d Cir.1973); *United States v. Holton*, 228 F.2d 827, 830 (7th Cir.), *cert. denied*, 351 U.S. 963, 76 S.Ct. 1027, 100 L.Ed. 1484 (1956); *Lyons v. Pearce*, 298 Or. 554, 694 P.2d 969, 973–76 (1985) (en banc); *Tafoya v. State*, 500 P.2d 247, 249–51 (Alaska 1972), *cert. denied*, 410 U.S. 945, 93 S.Ct. 1389, 35 L.Ed.2d 611 (1973); *State v. Malik*, 37 Wash.App. 414, 680 P.2d 770, 771–72 (1984); *Edwards v. State*, 393 So.2d 597, 598 (3d DCA Fla.1981), *review denied*, 402 So.2d 613 (Fla.1981); *Commonwealth v. Wellington*, 305 Pa.Super. 24, 451 A.2d 223,

his client to plead guilty based on patently erroneous advice, ... the plea [may be] ... involuntary and unknowing." *United States v. Rumery*, 698 F.2d 764, 766 (5th Cir.1983).[11]

Both parties rely on cases involving counsel's *failure* to inform the accused of the immigration consequences of his guilty plea. The courts considering whether such an omission constitutes ineffective assistance of counsel are divided on the issue. *Compare Commonwealth v. Wellington*, 305 Pa.Super. 24, 451 A.2d 223, 224–25 (1982) (ineffective assistance found) *and Edwards v. State*, 393 So.2d 597, 599 (3d DCA Fla.) (ineffective assistance found under state constitution), *review denied*, 402 So.2d 613 (1981), *with United States v. Santelises*, 509 F.2d 703, 704 (2d Cir.1975) (per curiam) (no ineffective assistance) *and United States v. Santelises*, 476 F.2d 787, 789–90 (2d Cir.1973) (same) *and Tafoya v. State*, 500 P.2d 247, 251–52 (Alaska 1972) (same), *cert. denied*, 410 U.S. 945, 93 S.Ct. 1389, 35 L.Ed.2d 611 (1973). The former Fifth Circuit has expressly deferred the question. *See Zinnanti v. Immigration and Naturalization Service*, 651 F.2d 420, 421 (5th Cir. Unit A 1981) (per curiam).[12]

224 (1982). This rule, however, does not necessarily dispose of the issue whether *counsel's* failure to apprise or misrepresentation to the defendant as to the possibility of deportation and exclusion can render the plea constitutionally inadequate because of counsel's ineffective assistance. *See Tafoya*, 500 P.2d at 251; *Edwards*, 393 So.2d at 599; *Wellington*, 451 A.2d at 224–25; *cf. Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980) (holding that trial court is under no duty to inquire into conflicts in representation, notwithstanding that such conflicts might give rise to a claim of ineffective assistance of counsel).

Several other courts have held that a defendant's ignorance of the immigration consequences of his guilty plea does not constitute the requisite "manifest injustice" for withdrawing the plea under Fed.R.Crim.P. 32(d). *See, e.g., Nunez Cordero v. United States*, 533 F.2d 723 (1st Cir.1976); *United States v. Sambro*, 454 F.2d 918 (D.C.Cir.1971) (per curiam). In *United States v. Russell*, 686 F.2d 35, 40–42 (D.C.Cir. 1982), the court held that the district court abused its discretion in denying the defendant's rule 32(d) motion. The court, however, expressly limited its holding to defendants who enter pleas under *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), or who "otherwise have a colorable claim of innocence." *Russell*, 686 F.2d at 40 n. 6.

In this case we are not confronted with a situation in which counsel merely failed to inform the accused of certain collateral consequences. Instead, this case involves an allegation that the defendant specifically inquired about a matter and received a positive response from his attorney.

The only federal case squarely addressing the validity of a guilty plea based on an affirmative misrepresentation by an accused's attorney that the defendant would not be deported involved a motion to withdraw the plea under Fed.R.Crim.P. 32(d) rather than a claim of ineffective assistance of counsel.[13] In *United States v. Parrino*, 212 F.2d 919 (2d Cir.), *cert. denied*, 348 U.S. 840, 75 S.Ct. 46, 99 L.Ed. 663 (1954), the court refused to permit a defendant to withdraw his plea even though his attorney had misinformed him that he would not be subject to deportation. However, as stated, ineffective assistance of counsel was not alleged and the court did not address it.

More recently, however, other federal courts have suggested that an affirmative misrepresentation by counsel that the accused would not be deported does constitute ineffective assistance of counsel and thus invalidates the resultant plea. In *United States v. Santelises*, 509 F.2d 703 (2d Cir.1975) (per curiam), in holding that counsel's failure to inform the accused of the immigration consequences of his guilty plea did not establish ineffective assistance of counsel, the Court of Appeals for the Second Circuit reasoned that "[s]ince [defense counsel] does not aver that he made an affirmative misrepresentation, [the defendant] fails to state a claim for ineffective assistance of counsel." *Id.* at 704; *see also United States v. Santelises*, 476 F.2d 787, 790 (2d Cir.1973). In *Briscoe v. United States*, 391 F.2d 984 (D.C.Cir.1968) (per curiam), in considering the constitutionality of a guilty plea based on the defendant's expectation that he would be deported rather than sentenced to a prison term, the court approved the district court's denial of the accused's section 2255 motion "because there was no showing that either the prosecution or [the defendant's] counsel had made any promise to [the defendant] that deportation would ensue on his plea." *Id.* at 986; *see also United States v. Briscoe*, 432 F.2d 1351, 1353 (D.C.Cir.1970) ("Under appropriate circumstances the fact that a defendant has been misled as to [the] consequence of deportability may render his guilty plea subject to attack.").

The only state decision of which we are aware involving the constitutionality of a guilty plea based on an affirmative misrepresentation by counsel that the defendant would not be deported is in accord with the more recent federal dicta. In *People v. Correa*, 124 Ill.App.3d 668, 80 Ill.Dec. 395, 465 N.E.2d 507 (1984), the accused was incorrectly informed by his attorney that his guilty plea would not change his immigration status because his wife was a United States citizen. The court held that "[w]here defense counsel has unequivocally represented to his client that [a guilty] plea will not result in his deportation and the defendant has relied upon this patently erroneous advice in deciding to plead guilty, post-conviction relief is appropriate to permit the defendant to plead anew...." *Id.* 465 N.E.2d at 512.

We decline to hold that an affirmative misrepresentation by an attorney in response to a specific inquiry by the accused which results in a plea of guilty necessarily constitutes ineffective assistance of coun-

---

**13.** Other courts have disposed of the issue by reasoning that there was no evidence or allegation that counsel was aware that the defendant was an alien. *See Daley v. State*, 61 Md.App. 486, 487 A.2d 320 (Ct.Spec.1985) (per curiam); *Proulx v. State*, 422 So.2d 1096 (4th DCA Fla. 1982); *Hahn v. State*, 421 So.2d 710 (1st DCA Fla.1982). In *State v. Malik*, 37 Wash.App. 414, 680 P.2d 770 (1984), the court found no ineffective assistance of counsel because the evidence showed that the defense attorney had informed the defendant that it was "possible" that he would be deported. In *Lyons v. Pearce*, 298 Or. 554, 694 P.2d 969 (1985) (en banc), the court noted that an attorney is required to inform the defendant of the possibility of deportation, *id.* at 977, but held that there was no ineffective assistance of counsel because the trial court found as a fact that the defendant was adequately apprised of the consequence of deportation. *Id.* at 977–78.

sel. "In any case presenting an ineffective assistance claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." *Washington*, —— U.S. at ——, 104 S.Ct. at 2065, 80 L.Ed.2d at 694.

 The totality of the circumstances in this case present a close issue. Downs-Morgan admits that his guilty plea was motivated in part by his desire to accept the plea bargain negotiated by his attorney, thereby avoiding the possibility of a sentence greater than five years. In addition, his counsel properly explained to him the conditions of the plea arrangement, the nature of the charges, the defenses that would have been raised at the trial, and the maximum possible jail term and fine. Also, Downs-Morgan stated at the plea hearing that his plea was voluntary and intelligent.[14] *See* Record at 112–26 (transcript of plea hearing).

 On the other hand, counsel's advice concerning whether he would be deported was in response to a specific question and may have been erroneous. Although the defendant need "not correctly assess every relevant factor entering into his decision" whether to plead guilty, *Brady*, 397 U.S. at 757, 90 S.Ct. at 1473, 25 L.Ed.2d at 761, certain considerations are so important that misinformation from counsel may render the guilty plea constitutionally uninformed. *See, e.g., Kennedy v. Maggio*, 725 F.2d 269, 272–73 (5th Cir.1984) (patently erroneous advice that death penalty was available); *United States v. Rumery*, 698 F.2d 764, 766 (5th Cir.1983) (patently erroneous advice that maximum prison term was thirty years rather than five years). In this case,

Downs-Morgan's allegation that if he was deported he would certainly be imprisoned for many years and possibly be executed by the Nicaraguan government may be crucial to the informed nature of his plea. Under these circumstances not only are deportation and exclusion harsh consequences, *see, e.g., Jordan v. DeGeorge*, 341 U.S. 223, 243, 71 S.Ct. 703, 714, 95 L.Ed. 886, 898 (1951) (Jackson, J., dissenting) ("life sentence of exile"), *Fong Haw Tan v. Phelan*, 333 U.S. 6, 10, 68 S.Ct. 374, 376, 92 L.Ed. 433, 436 (1948) ("the equivalent of banishment"); *Ng Fung Ho v. White*, 259 U.S. 276, 284, 42 S.Ct. 492, 495, 66 L.Ed. 938, 943 (1922) (may result in the "loss of both property and life; or of all that makes life worth living"), but the spectre of certain imprisonment for many years and possible death would, in our view, affect a decision whether to plead guilty at least as much as, for example, the prospect of an additional twenty-five year sentence at issue in *Rumery*. This is especially true when we consider that Downs-Morgan makes at least a colorable claim of innocence. Without an evidentiary hearing we have no way of knowing precisely what the attorney advised his client or, for that matter, if he made any of the statements attributed to him. As a result, we conclude that under these unique circumstances Downs-Morgan is at least entitled to an evidentiary hearing to determine if he was afforded reasonably effective assistance from his counsel in deciding to plead guilty.[15]

The judgment of the district court is REVERSED and the case REMANDED

---

14. A defendant's statement at the time of his Rule 11 hearing that his guilty plea is intelligent and voluntary is not dispositive, although it gives rise to a presumption that the plea is constitutionally adequate. *See generally Blackledge v. Allison*, 431 U.S. 63, 74–75, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136, 147–48 (1977); *United States v. Nuckols*, 606 F.2d 566, 568–69 (5th Cir.1979). At the plea hearing, Downs-Morgan testified that his plea was voluntary and that he was satisfied with his counsel's representation. Any presumptions arising from these statements, however, are overcome because Downs-Morgan had no way of knowing at the time of

the hearing that his lawyer had incorrectly informed him that he would not be deported.

15. We emphasize the narrowness of our decision. We do not hold that the district court is under any obligation to inform the defendant about possible immigration consequences or that the court's failure to do so affects the constitutionality of a guilty plea. Nor do we suggest that an affirmative misrepresentation by counsel in response to a specific inquiry about the possibility of deportation or exclusion, without the additional factors of imprisonment and execution, is sufficient to warrant collateral relief.

for proceedings consistent with this opinion.

NICHOLS, Senior Circuit Judge, concurring.

I join in the scholarly opinion of Judge Henderson and agree Downs-Morgan should have an evidentiary hearing to determine whether his guilty plea resulted from ineffective assistance of former counsel. I think a few added comments are appropriate.

According to the statements of Downs-Morgan's present counsel, to some extent supported by the record, he was a resident of Corn Island, Nicaragua, until, in March 1980, he fled that country on account of a falling out with the Sandinista government which he feared would have consequences detrimental to his health. Thereafter, he worked on off-shore fishing vessels, mostly off the Cayman Islands. At some time he was recruited at the Cayman Islands to serve as crewman on a vessel he supposed to be bound for Mexico. Only when at sea did he learn the cargo was marijuana. The vessel was boarded by the United States Coast Guard somewhere off Sarasota, Florida, and taken by them into Key West. He was held at Miami, and indicted for conspiracy on two counts. He at first pled not guilty to both, but changed his plea to guilty on one of them pursuant to a plea bargain. He says his then counsel, Mr. Rosen, told him, respecting possible immigration consequences of his plea, that "they would not send him back to Nicaragua."

Mr. Rosen has not as yet corroborated or denied this statement imputed to him, or if he said it, whether he meant to be understood as saying Downs-Morgan could remain in the United States, or something different. Nor, so far as I know, has the Immigration and Naturalization Service confirmed that they would or would not send Downs-Morgan to Nicaragua despite the alleged danger to his life there, his having voluntarily exiled himself from that country long before his criminal involvement, or whether, in view of the peculiar circumstance of his first arrival at Key West, erasure of the conviction would make him an acceptable guest. It seems to me we also need to know what reception Downs-Morgan would have in other foreign countries than Nicaragua, for example, the Cayman Islands whence immediately he came. It appears an immigration judge has ruled that the conviction makes Downs-Morgan automatically excludable and I suppose his present counsel agrees that no further exhaustion of administrative remedies there is required, but we are not instructed whether his being excludable means he must go to Nicaragua, not somewhere else.

In the circumstances a hearing on the facts is unavoidable. Even if counsel actually said what Downs-Morgan states he said, he may well have supposed the matter was academic because Downs-Morgan had no chance of remaining here anyway. The hope of remaining here appears to be one Downs-Morgan formed at a later date and the facts given us do not reflect he ever expressed such a hope before his conviction. Whether the legal advice was so bad as to apply a constitutional taint to the ensuing plea and conviction appears to me something that can be assessed only in light of full and clear information as to all these other matters.

Should I for one learn that Downs-Morgan could return to the Cayman Islands despite his conviction, my desire to impeach former counsel for giving constitutionally inadequate advice would be much abated. Downs-Morgan having served his sentence, the prosecution and the courts should not and could not be required to retry him unless it is really, as alleged, a matter of life or death, and if it really is, the retrial seems an inappropriate remedy, as constitutional remedies sometimes are.

I join in the opinion in the expectation that in making any further decision, the court will be able to act on findings as to all the relevant facts.