OPINION OF THE COURT
CARMICHAEL, Judge:
Pursuant to his pleas, appellant was found guilty of rape and forcible sodomy in violation of Articles 120 and 125, Uniform Code of Military Justice, 10 U.S.C. secs. 920 and 925 (1982) [hereinafter UCMJ], respectively. The military judge sentenced him to a dishonorable discharge, confinement for thirteen years, forfeiture of all pay and allowances, and reduction to the grade of Private E-l. The convening authority, acting in conformity with the terms of the pretrial agreement, reduced the confinement to twelve years and approved the sentence as modified.
*740 Appellant, in his original assignment of error, asserts that the military judge erred in not finding his restriction tantamount to confinement. In a supplemental assignment, appellant alleges several additional errors which were heard by this court in oral argument. Two of the supplemental assignments of error allege (1) that appellant’s plea was improvident because the military judge failed to advise appellant that he could be deported or denied citizenship as a direct result of his plea, and (2) that appellant was denied effective assistance of counsel because his defense counsel failed to advise him of the citizenship and deportation consequences of his guilty plea. We conclude that only the latter two assignments and the original assignment merit discussion. We will discuss these two supplemental assignments seriatim and then address the original assignment of error.
As a general rule of procedure in courts-martial, a military judge has no duty to advise an accused of the collateral consequences should his plea of guilty be found provident. See Manual for Courts-Martial, United States, 1984, Rule for Courts-Martial [hereinafter R.C.M.] 910.[1] This court finds no facts in the instant case which would preclude application of the general rule. It is difficult for us to imagine a more formidable obstacle to the orderly administration of military justice, and the accused’s right to a speedy and reliable trial verdict, than a military judge digressing to ascertain possible collateral consequences of a court-martial conviction and, should any be found, endeavoring to explain them to the accused. Thus, the standard established by the United States Court of Military Appeals for challenging a guilty plea based on an accused’s misapprehension of the collateral consequences is an exacting one.
[W]hen collateral consequences of a court-martial conviction — such as administrative discharge, loss of a license or a security clearance, removal from a military program, failure to obtain promotion, deportation, or public derision and humiliation — are relied upon as the basis for contesting the providence of a guilty plea, the appellant is entitled to succeed only when the collateral consequences are major and the appellant’s misunderstanding of the consequences (a) results foreseeably and almost inexorably from the language of a pretrial agreement; (b) is induced by the trial judge’s comments during the providence inquiry; or (c) is made readily apparent to the judge, who nonetheless fails to correct that misunderstanding.
United States v. Bedania, 12 M.J. 373, 376 (C.M.A.1982) (emphasis added).
Thus, it is not just the magnitude of the collateral consequence that obligates a military judge to ascertain and explain what its results may be, it is whether during the providence inquiry the military judge, having been expressly placed on notice about collateral consequences that are “major,” either induces or fails to correct an accused’s misunderstanding of such consequences. Here, the military judge was neither made aware that appellant was subject to possible deportation if convicted of a felony, nor did he comment on deportation during his providence inquiry. Furthermore, the terms of the pretrial agreement do not mention deportation or other possible immigration consequences, and no reference was made to such consequences at *741 trial. Applying the Bedania standard to these facts, we find that the military judge did not have a duty to advise appellant that he possibly could be deported or denied United States citizenship as a direct result of his plea of guilty. Therefore, appellant’s plea is provident.[2]
Appellant argues that he was denied the effective assistance of counsel because his trial defense counsel failed to advise him of the immigration consequences of his guilty plea. Specifically, his defense counsel did not advise him that, under the provisions of 8 U.S.C. sec. 1251(a)(4) (1982), his guilty plea subjected him to possible deportation. This statute, in pertinent part, provides:
(a) Any alien in the United States ... shall, upon the order of the Attorney General, be deported who—
******
(4) is convicted of a crime involving moral turpitude committed within five years after entry and either sentenced to confinement or confined therefore in a prison or corrective institution, for a year or more, or who at any time after entry is convicted of two crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefor [sic] and regardless of whether the convictions were in a single trial.[3]
In a post-trial affidavit admitted by this Court on the issue of effective assistance of counsel, see United States v. Davis, 3 M.J. 430, 431 n. 1 (C.M.A.1977) (allied papers and other matters outside the trial record may be considered by military appellate courts where the question of effective assistance of counsel is concerned), appellant declares that his military defense counsel never advised him of the “immigration and naturalization consequences of [his] guilty pleas.” He further states that his military counsel did not tell him that as a result of his court-martial conviction he *742 faced possible deportation and exclusion from the United States, or the possibility of being permanently barred from becoming a United States citizen. Appellant concludes his affidavit with the following statement: “If I had known of the consequences of my guilty plea, I would have insisted upon a recommendation by the Military Judge that I not be deported, or I would have reconsidered my decision to plead guilty.”
The United States Supreme Court has held that its two-part Strickland v. Washington [4] test applies when an accused challenges the validity of his guilty plea on the basis of ineffective assistance of counsel. Hill v. Lockhart, 474 U.S. 52, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). Thus, to prevail on a claim of ineffective assistance, an accused who pled guilty must show that his counsel’s advice did not fall within the range of professional competence demanded of attorneys in criminal cases and that, but for counsel’s error, there is a reasonable probability that he would not have entered a guilty plea. Hill v. Lockhart, 106 S.Ct. at 370. Under this test, it is not enough for an accused to establish that his counsel’s representation “fell below an objective standard of reasonableness,” — he must show prejudice. Strickland v. Washington, 466 U.S. at 687-91, 104 S.Ct. at 2064-66. In other words, he must show that his counsel’s error “prejudiced” him by causing him to plead guilty rather than proceed to trial on the merits. We find that appellant’s allegations are insufficient to satisfy the first part of the Strickland test, that of professionally unreasonable advice, and therefore have no need to conduct the “prejudice” inquiry required by the test’s second part.
Although “chief reliance must be placed on defense counsel to inform an accused about the collateral consequences of a court-martial conviction and to ascertain his willingness to accept those consequences,” United States v. Bedania, 12 M.J. at 376, absent a specific inquiry by an accused or an express requirement in military law, we conclude that a defense counsel normally is not required to apprise an accused of the collateral consequences of his guilty plea. In the present case, appellant alleges that he did not receive any advice from his defense counsel about the possible immigration consequences of a court-martial conviction. Nowhere in his affidavit does appellant allege that he expressed any concern or asked his trial defense counsel about such collateral consequences, so this is not a case where a defense counsel made an affirmative misrepresentation to an inquiring accused.[5] It is simply a case where no advice was given on the collateral consequence of possible deportation. Federal courts considering this issue have found that a defense counsel is not required to inform an accused of the immigration consequences of a guilty plea. United States v. Campbell, 778 F.2d 764 (11th Cir.1985); United States v. Nagaro-Garbin, 653 F.Supp. 586 (E.D.Mich.1987); Government of Virgin Islands v. Pamphile, 604 F.Supp. 753 (D.V.I.1985).
To be considered ineffective, the performance of counsel must “fall below the performance ordinarily expected of fallible lawyers.” United States v. Jefferson, 13 M.J. 1, 7 (C.M.A.1982). Moreover, a strong presumption exists that “counsel’s conduct falls within the wide range of reasonable professional assistance.” United States v. Haston, 21 M.J. 559, 563 (A.C.M.R.1985), citing Strickland v. Washington, 466 U.S. at 689, 104 S.Ct. at 2065, petition granted on other grounds, 22 M.J. 369 (C.M.A. *743 1986). Since appellant failed to satisfy the first half of the Strickland v. Washington test, in that he did not show that his defense counsel performed in a professionally unreasonable manner in not informing him of the immigration consequences of his guilty plea, we find this supplemental assignment of error to be without merit.
Assuming arguendo that appellant’s counsel did err in failing to advise him of collateral immigration consequences, appellant, through his affidavit, still does not satisfy the “prejudice” requirement of the Strickland v. Washington test. Appellant states that he would have “insisted” that the military judge recommend that he not be deported, or he would have reconsidered his decision to plead guilty. However, pretrial agreements in the military are agreements between the convening authority and the accused. The military judge is not a party to these agreements nor can he be bound by their terms. In other words, the convening authority cannot require the military judge to make a clemency recommendation by including such a requirement in the pretrial agreement. Therefore, even if appellant had known that a collateral consequence of his guilty plea was possible deportation, he could not have “required” through a pretrial agreement that the military judge recommend that he not be deported. Whether or not to make a clemency recommendation is within the sole discretion of the military judge.
Furthermore, since appellant merely states in his affidavit that he would have reconsidered his decision to plead guilty, he has failed to show the requisite outcome-determinative prejudice. Appellant does not declare that he would have changed his decision, only that he would have reconsidered it. If appellant’s plea would have remained the same, there is no prejudice. See Hill v. Lockhart, 106 S.Ct. at 370 (petitioner did not show prejudice when he failed to allege that, “had counsel correctly informed him about his parole eligibility date, he would have pleaded not guilty and insisted on going to trial”).
Our review of the record satisfies us that appellant’s plea of guilty was induced by the strength of the government’s case, as well as the substantial benefit he received by offering to enter such a plea. At trial, appellant would have faced the victim that he had brutally raped and forcibly sodomized, and her testimony as to the viciousness of his attack would have been corroborated by expert medical testimony. The maximum permissible confinement had appellant been convicted of the rape alone was confinement for life. However, under the terms of the pretrial agreement, the convening authority could not approve any period of confinement in excess of twelve years. See La Porta v. United States, 651 F.Supp. 884, 893 (E.D.Pa.1986) (reason for defendant’s plea of guilty was because government’s case overwhelming; plea not involuntary because defense counsel failed to advise defendant of deportation consequences).
We find no merit in appellant’s assertion that a portion of his pretrial restriction was tantamount to confinement. Our review of the totality of the conditions to which appellant was subjected during the four-day period of restriction at issue, see United States v. Smith, 20 M.J. 528 (A.C.M.R.1985), convinces us that this period was not tantamount to confinement.
In reaching this determination, we find that the four-day period of restriction was relatively oppressive. Restricting a servicemember to a one-room area, as was done with appellant, may in and of itself create a condition tantamount to confinement.[6] However, in this case the fol *744 lowing additional factors served to lessen the impact of the restraint imposed. Appellant conceded that he could go anywhere on post during the four-day period that he was restricted to a one-room area, provided he had an escort. Furthermore, an assertion was made at trial that appellant was never denied any reasonable request for an escort. In fact, the trial record establishes that appellant was provided an escort on several occasions, for example, to return to his room to shower and watch television. We note that appellant’s trial defense counsel, although obviously aware of the nuances involved in restriction tantamount to confinement, did not assert that the severity of appellant’s restriction equated to confinement. Finally, the military judge, after the conditions of the restriction had been established on the record, found that appellant had been restricted for a period of thirty-three days including the four-day period under consideration. Thus, the military judge declined to find the four-day period of restriction as being restriction tantamount to confinement. As a matter of judicial policy, this Court normally will not disturb a military judge’s factual determinations unless convinced that there are no existing evidentiary bases for them. United States v. Gregory, 21 M.J. 952, 954 (A.C.M.R.), affirmed, 23 M.J. 246 (C.M.A.1986) (summary disposition).
We find the remaining supplemental assignment of error — a claim that appellant’s plea of guilty was improvident because the military judge failed to develop an adequate factual basis and further failed to explain the elements of potential defenses — to be without merit. See United States v. Barnes, 12 M.J. 779, 780 (A.C.M.R.1981), petition denied, 13 M.J. 207 (C.M.A.1982) (in guilty plea case inconsistent matter presented must reasonably raise a defense in order to rise to that level of inconsistency contemplated by Article 45, UCMJ; presenting the mere possibility that a defense exists is insufficient).
Although not at issue, we note the terms of the pretrial agreement required appellant to request trial by military judge alone. The military judge thoroughly explored this requirement with appellant and ascertained that: Appellant understood he had an “absolute right” to be tried by court members, the idea of a judge alone condition in the agreement had come from appellant, and the government had made no attempt to have such a condition included in the agreement.
Under existing law an accused may negotiate away his right to a trial by court members in order to obtain a more favorable pretrial agreement, United States v. Zelenski, 24 M.J. 1 (C.M.A.1987), but see the strong concern about such waiver provisions expressed by the United States Court of Military Appeals in Zelenski and this Court in United States v. Baumgart, 23 M.J. 888 (A.C.M.R.1987). Since Congress provided military accused with an option of being tried by court members or military judge alone, an accused’s waiver of a forum option as part of a pretrial agreement will be closely scrutinized by military appellate courts. See generally United States v. Ralston, 24 M.J. 709 (A.C.M.R.1987).
The findings of guilty and the sentence are affirmed.
Senior Judge RABY and Judge ROBBLEE concur.

. Rule for Courts-Martial 910 is, in part, based on Federal Rule of Criminal Procedure 11 [hereinafter Rule 11] and its format generally follows that of Rule 11. Manual for Courts-Martial, United States, 1984, Analysis of R.C.M. 910, App. 21, A 21-52. "[Rule] 11 requires the trial court to personally inform the defendant of certain specified rights and possible consequences before accepting a guilty plea." "Collateral relief is available for violations of Rule 11 only when the infraction is a ‘fundamental defect which inherently results in a complete miscarriage of justice’ or an 'omission inconsistent with the rudimentary demands of fair procedure’ ” (citations and footnote omitted). Downs-Morgan v. United States, 765 F.2d 1534, 1537 (11th Cir. 1985). "All the courts considering the various versions of Rule 11 agree that it does not require the trial judge to apprise the defendant of the possible immigration consequences of his guilty plea” (citations omitted). Downs-Morgan v. United States, 765 F.2d at 1538.

. We agree with counsel for appellant that the decision of the Court of Appeals for the Ninth Circuit in Gubbels v. Hoy, 261 F.2d 952 (9th Cir.1958), is dated and no longer of precedential value. Contrary to the holding of Gubbels, we have no doubt that a general court-martial conviction may be the basis for the deportation of an alien under 8 U.S.C. sec. 1251(a)(4) (1982), the governing Federal statute. From an administrative perspective, it is no longer impossible for a court-martial to comply with the clemency subsections of the statute, assuming arguendo that such an impossibility existed at the time Gubbels was decided. From the perspective of guaranteeing the defendant a scrupulously fair trial and affording him a full panopoly of rights which, during peacetime, are only minimally curtailed by military necessity, today’s military justice system compares favorably with the Federal justice system, as well as the most enlightened of State systems. A military accused may elect to be tried by military judge alone rather than by court members, and, not infrequently, the military judge makes a clemency recommendation in the event the accused is convicted. Thus, in an appropriate case, we believe a military judge has the authority to recommend, should he choose to do so, against the deportation of an alien convicted by court-martial. See 8 U.S.C. 1251(b)(2) (1982) (sets forth procedure for sentencing court to recommend that convicted alien not be deported); R.C.M. 1105(b)(4) (clemency recommendations). However, as always where collateral matters are concerned, the exercise of judicial restraint is paramount.

. Appellate counsel for the government makes an ingenious argument that appellant is not subject to deportation under the controlling Federal statute. She marshals facts, together with regulatory authority, to show that appellant’s conviction occurred more than five years after he lawfully entered the United States and therefore he does not fit within the first part of 8 U.S.C. sec. 1251(a)(4). She then argues that appellant does not fit within the second part of the pertinent subsection because his crimes arose out of a single scheme of criminal misconduct. But see Fitzgerald v. London, 238 F.2d 864, 867 (1st Cir.1956) (in determining whether two crimes arose out of a single scheme of criminal misconduct, it will not be presumed, in the absence of evidence to the contrary, that an alien convicted of indecent assault and lewd speech or behavior was convicted of the latter offense solely on the basis of the one indecent assault charge.) Government appellate counsel concludes this portion of her argument by contending that appellant, having failed to demonstrate adequately that he actually is subject to deportation as a result of his conviction, cannot succeed on those supplemental claims which are based on possible deportation consequences.' While we find counsel’s argument highly persuasive, we shall assume, without deciding, that appellant is subject to possible deportation for the purposes of this decision.

. 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

. Since resolution of the issue is unnecessary in this case, we reserve judgment on whether misadvice by a defense counsel which is given in response to an accused’s specific inquiry and which results in a guilty plea, necessarily constitutes ineffective assistance of counsel. We note, however, that the Court of Appeals for the Eleventh Circuit expressly declined to hold that an affirmative misrepresentation by counsel resulting in a plea of guilty necessarily was ineffective assistance. Instead, it determined that an evidentiary hearing on the issue was required to develop the “totality of the circumstances.” Downs-Morgan v. United States, 765 F.2d at 1541.

. When staff judge advocates, chiefs of military justice, and trial counsel provide military justice instruction to the officers and noncommissioned officers whom they support, the subject of restraint tantamount to confinement with its attendant problems should be given in-depth coverage. The use of oppressive pretrial restraint as a substitute for pretrial confinement is likely to continue until either some unfortunate accused is seriously injured or there is a concerted effort by senior commanders and their staff judge advocates to stop such restraint *744 through an aggressive educational program. The abuse of pretrial restraint, whether intentional or unintentional, creates a perception among young soldiers that the military justice system is a flawed one that can be unfairly manipulated to suit the personal whims of a commander. Although this is almost always an erroneous perception, it is nevertheless one that must be dealt with. Among the issues which may evolve from restraint tantamount to confinement are: illegal pretrial punishment, speedy trial, and the preferral of charges against individuals who impose severe conditions of restraint (for example, such individuals could be subject to being charged with unlawful detention and noncompliance with procedural rules in violation of Articles 97 and 98, UCMJ, 10 U.S.C. secs. 897 and 898 (1982), respectively). Hopefully, if each staff judge advocate initiates a continuing legal education program for key military personnel, the issue of restraint tantamount to confinement will seldom come before this Court in the future.