**Rene DE LA PAZ, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**No. 91–1412–CIV.**

United States District Court, S.D. Florida.

March 23, 1992.

ley's responsibility now that WMJK is sold, was not addressed at trial.

Helen C. Trainor, Asst. Federal Public Defender, Miami, Fla., for petitioner.

Lee S. Massey, Asst. U.S. Atty., Miami, Fla., for respondent.

## ORDER VACATING PETITIONER'S GUILTY PLEA

MORENO, District Judge.

THIS CAUSE came before the Court upon petitioner's Motion to Vacate, Set Aside or Correct his sentence pursuant to 28 U.S.C. § 2255. A United States magistrate conducted a review of the plea colloquy and sentencing transcripts and recommended that the motion to vacate, set aside or correct sentence be granted and the petitioner's plea of guilty vacated.

After the government filed objections to the magistrate's report and recommendation, this court held an evidentiary hearing to consider the contentions in the § 2255 petition. The court made several oral findings as to petitioner's arguments but required the parties[1] to brief the following

---

1. De La Paz filed his motion to vacate in a *pro se* capacity, although he had been represented by counsel at the plea colloquy and sentencing proceedings. At the evidentiary hearing, this court assigned the office of the federal public

issue: whether a sentencing judge's failure to personally advise the defendant of the maximum and minimum penalties applicable to his offense mandates that the plea be vacated pursuant to a petition under 28 U.S.C. § 2255.

The parties have filed briefs [2] and this matter is now ripe for determination. For the reasons that follow, this court adopts the recommendation of the magistrate and orders that petitioner's guilty plea be vacated.

## I. PROCEDURAL HISTORY AND EVIDENTIARY HEARING

### A. Proceedings in the criminal case

On December 6, 1988, pursuant to a written plea agreement, petitioner De La Paz entered a plea of guilty to possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). In the written plea agreement, De La Paz agreed to plead guilty to a possession charge (count III of a three-count indictment), and the government agreed to drop a conspiracy count (count I). De La Paz was sentenced to twelve years of imprisonment on April 24, 1989.

Over two years later, on July 9, 1991 De La Paz moved to vacate his guilty plea pursuant to 28 U.S.C. § 2255. In the petition, De La Paz contended that: (1) his conviction was obtained by an unlawfully induced plea of guilty because his counsel represented to De La Paz that his sentence would not exceed five years; (2) he was denied effective assistance of counsel; (3) he was denied the right to appeal; and (4) he was enhanced as a career criminal in violation of 21 U.S.C. § 851(a)(1).

### B. Evidentiary Hearing

After hearing testimony from counsel who represented De La Paz at his plea colloquy and sentencing, a woman who translated conversations between De La Paz and his attorney from English into Spanish, and De La Paz himself, the court made the following oral findings at the evidentiary hearing:

> The court made a credibility finding in favor of De La Paz's former attorney and against De La Paz on the issue of alleged inducement of plea and ineffective assistance of counsel.
>
> The court determined that the sentencing guidelines issue raised in the magistrate's report and recommendation was moot because the sentencing judge specifically fashioned a non-guidelines sentence to approximate a sentence he would have given had the guidelines not been applicable.
>
> The court found that De La Paz was fully aware *at the time of sentencing* that he could receive a maximum of twenty years incarceration because that period appeared on the face of the presentence investigation report which was read to De La Paz before sentencing.
>
> The court rejected De La Paz's contention that he was denied the right to appeal his sentence.
>
> The court found De La Paz's assertion that his sentence was unlawfully enhanced as a career criminal to be without merit.

The government maintains that these findings dispose of the matter and that De La Paz's plea should not be vacated. The government argues that this court should not address the issue whether De La Paz was personally informed of the maximum statutory penalty applicable to his offense at the plea colloquy because De La Paz failed to raise this matter in the § 2255 petition. Indeed, the Magistrate Judge was the first to point out that the sentencing judge had failed to inform De La Paz of the maximum penalty that he could impose

defender to represent De La Paz through the resolution of his petition.

**2.** The court was inclined to strike the government's brief because it was untimely filed according to the times established in this court's oral order of December 19, 1991. Indeed the court had already denied the government's motion for an extension of time in which to file the brief because that too was filed after the deadline. This matter is of great importance in the interpretation of Rule 11 of the Federal Rules of Criminal Procedure, however, and so the court perused the government's brief.

and that nothing in the record indicated that De La Paz appreciated the consequences of his plea.

This court is constrained to liberally construe the pleadings of an individual advancing a cause *pro se*. *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Therefore, the court finds that the issue of De La Paz's knowledge concerning the consequences of his plea is fairly raised within the parameters of his unlawful inducement argument.

## II. FACTUAL BACKGROUND AND RULE 11 ANALYSIS

### A. Facts from Transcripts of Plea Colloquy and Sentencing

During the plea colloquy held on December 6, 1988, the sentencing judge first addressed Cruz, one of De La Paz's two codefendants. After making the standard inquiries as to competence, the court accepted Cruz's plea of guilty to a charge of possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) (count II of the three-count indictment). Next, the court questioned De La Paz and the other co-defendant, Fuentes–Morales, as to their competence and the voluntariness of their guilty plea to count III.

The court proceeded to read the entire contents of Cruz's written plea agreement into the record and asked the prosecutor what would be the maximum penalty applicable to count II. The prosecutor responded that it was twenty years and a two hundred fifty thousand dollar fine. The court then inquired whether the government would appeal any departure from the sentencing guidelines, and the government reserved the right to appeal.

The sentencing judge then addressed De La Paz and Fuentes–Morales jointly for the second time. After summarizing the contents of their written plea agreements, the court asked De La Paz and Fuentes–Morales whether they understood their agreements and whether they had been promised anything that did not appear in the agreements. Both De La Paz and Fuentes Morales responded, "No".

The judge, noting that counts II and III charged the same possession offense but for different dates, next addressed Cruz and informed her that under count II, she was charged with aiding and abetting possession of cocaine on June 9, 1988, while under count III, De La Paz and Fuentes–Morales were charged as principals to possession of cocaine on June 16, 1988. Finally, the court determined that both De La Paz and Fuentes–Morales understood the nature of the pending charges and that each was aware of the rights that would be forfeited by a plea of guilty. The court accepted guilty pleas from all three defendants.

At the sentencing hearing on April 24, 1989, De La Paz's counsel admitted that he had discussed the possibility of a five year sentence for De La Paz with the government. He reminded the court several times, however, that the government had made no promises about recommending a five year sentence. It was merely general conversation between two opposing counsel[3] concerning the sentencing habits of a particular judge.

The judge sentenced De La Paz to a term of twelve years. This sentence reflected his estimate of the appropriate Guidelines sentence, with a downward departure sufficient to sentence De La Paz to imprisonment equivalent to that which he would have served had the Guidelines not been in effect.

---

**3.** At this court's evidentiary hearing on the § 2255 petition, former counsel for De La Paz repeated that the government had not promised to recommend a five year sentence. He also stated that he and the prosecutor had general conversation as to the sentencing habits of the particular judge and whether five years was a possible sentence with that judge. This court has already found counsel for De La Paz' testimony to be credible and that he did not unlawfully induce De La Paz into signing a plea agreement which did not recommend a five year sentence. But even general conversation about the sentencing habits of a particular judge, if communicated to De La Paz, could raise false hopes and uncertainty with respect to the consequences of a guilty plea.

**B. Rule 11 analysis**

■ Rule 11 of the Federal Rules of Criminal Procedure governs the federal courts in the acceptance of pleas. It provides for specific information to be given to each defendant personally before the court may accept a guilty plea. The Fifth Circuit has identified three "core" concerns of Rule 11 which are: (1) the guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know the consequences of the plea. *United States v. Dayton*, 604 F.2d 931, 935 (5th Cir.1979) (en banc), *cert. denied*, 445 U.S. 904, 100 S.Ct. 1080, 63 L.Ed.2d 320 (1980).[4]

■ As to the third "core" concern in *Dayton*, the defendant must only be informed of the direct consequences of his plea, not collateral consequences. *Downs–Morgan v. United States*, 765 F.2d 1534, 1537 (11th Cir.1985). The court need only inform the defendant of the rights and consequences directly stated in the rule. In *Downs–Morgan*, the court held that the possible immigration consequences of a guilty plea were collateral.

Of the direct consequences stated in the rule, those most relevant here are provided in subsection (c). That portion states that "[b]efore accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform him of and determine that he understands, the following: (1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum penalty provided by law ..." Fed.R.Crim.P. 11(c)(1).

■ A petitioner under § 2255 must confront another hurdle even if the record demonstrates that the sentencing judge failed to completely follow the dictates of Rule 11. When a petitioner collaterally attacks a sentence on a § 2255 petition, the court will not set aside the plea if the error amounts to a mere technical or formal violation. The petitioner must show that the error resulted in a complete miscarriage of justice or in a proceeding inconsistent with the rudimentary demands of fair procedure. *United States v. Timmreck*, 441 U.S. 780, 784, 99 S.Ct. 2085, 2087, 60 L.Ed.2d 634 (1979); *Holmes v. United States*, 876 F.2d 1545, 1549–50 (11th Cir. 1989); *Keel v. United States*, 585 F.2d 110, 113 (5th Cir.1978).[5]

■ Violations of Rule 11 that involve the "core" concerns identified in *Dayton, supra*, may nevertheless be mere formal or technical violations if the record of the plea colloquy indicates that a defendant had notice of omitted information by means other than judicial pronouncement. *Holmes*, 876 F.2d at 1550 (failure to advise defendant of minimum mandatory penalty not inconsistent with rudimentary demands of fair procedure where before plea was accepted defendant knew that government would argue for a substantial period of incarceration and that court had absolute discretion to impose maximum sentence of life without parole); *Lilly v. United States*, 792 F.2d 1541, 1544 (11th Cir.1986) (failure to advise defendant that he could not withdraw plea when judge imposes tougher sentence than one recommended by prosecutor not inconsistent with rudimentary demands of fair procedure where before plea was accepted defendant was informed that the recommendation was not binding on the court and that there was a substantial likelihood that he would receive a sentence larger than that recommended).

■ The issue which the court directed the parties to brief breaks down into two parts: (1) whether the trial judge failed to comply literally with the requirements of Rule 11 and (2) whether this failure was merely technical or constituted a miscarriage of justice or was inconsistent with the

---

**4.** The Eleventh Circuit court of Appeals has adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981).

**5.** A similar standard for direct appeals of convictions entered pursuant to guilty pleas was added to Rule 11 in 1983. This harmless error provision states that: "Any variance from the procedures required by this rule which does not affect substantial rights shall be disregarded." Fed.R.Crim.P. 11(h).

rudimentary demands of fair procedure. Based on the record of the plea colloquy, this court finds that the trial judge failed to comply with Rule 11 because he did not personally inform De La Paz of the maximum penalty applicable to his offense.

A review of the plea colloquy transcript shows that the trial judge first addressed Cruz alone and inquired of the government as to the maximum penalty associated with count II. De La Paz was not charged in count II. At the time that the trial judge was questioning Cruz, he did not explain with what offense Cruz had been charged. He merely continued on and informed De La Paz and Fuentes–Morales of the terms of their written plea agreements.

It is obvious that the trial judge never directly addressed De La Paz alone and determined whether he understood that the maximum penalty applicable to count III was twenty years. The government argues that his presence next to Cruz in the courtroom when the trial judge informed Cruz of the maximum penalty applicable to her offense was sufficient because De La Paz committed the same offense albeit on a different date.

In order for De La Paz to have associated what the trial judge told Cruz about the penalty range applicable to her offense with the offense charged in his count, De La Paz would have had to have (1) known that the indictment charged the same offense under count II as count III; (2) recalled what the trial judge had stated as to count II; (3) known enough about the law to have believed that despite his allegedly aggravated role in his offense, he could receive the same sentence as applied to Cruz whose role was *de minimus;* (4) understood that different actions occurring on different dates can amount to the same offense and (5) believed, given his criminal history, that the same sentencing range applicable to a woman with no criminal history was applicable to him. Clearly, De La Paz was not personally informed by the judge of the maximum penalty applicable to his offense. As a result, he did not understand the consequences of his plea.

It is also clear that this was not merely a technical or formal violation, but rather an error that resulted in a proceeding that was inconsistent with the rudimentary demands of fair procedure. A court must inform the defendant of the minimum and maximum penalties associated with an offense to which he is considering pleading guilty to enable him to decide whether to exercise his constitutional right to put the government to the test at trial. *See McCarthy v. United States,* 394 U.S. 459, 466, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (1969). Knowing the applicable range of penalties, the defendant can meaningfully evaluate the likelihood that he will receive a lower sentence by acknowledging guilt against his chances of prevailing at trial.

The record does not demonstrate, as it did in *Holmes* and *Lilly, supra,* that De La Paz was informed of the maximum twenty years by alternative means *before* the court accepted his plea. The record does not reveal that his written plea agreement explained the statutory range of zero to twenty years. Counsel for De La Paz testified credibly that he informed De La Paz before the plea colloquy that the maximum statutory penalty for his offense was twenty years, but this advice does not appear in the transcript of the plea colloquy. Moreover, De La Paz was not constructively informed by the prosecutor's response to the trial judge's inquiry into the maximum penalty applicable to count II.

Indeed, this court has already determined that the first time De La Paz was at all informed he could receive twenty years occurred *after* his plea was accepted when he read the presentence investigation report at the sentencing hearing.[6] Even though no promise was made to De La Paz that the judge would impose a five year sentence, De La Paz would not have raised

---

**6.** The brief for De La Paz also maintains that De La Paz was entitled to be informed of the maximum and minimum penalties applicable to his offense at the time of sentencing. Although not integral to the outcome of this petition to vacate plea, the court takes the liberty of pointing out that the procedural safeguards of Rule 11 apply only at the time the court is accepting the plea. *United States v. Segal,* 549 F.2d 1293, 1296 (9th Cir.1977).

that issue in his collateral attack, if he had not somehow been informed of his counsel's conversations with the prosecutor concerning the sentencing habits of the trial judge.

 A trial judge's failure to inform a defendant of the maximum penalty applicable to his offense rises to an error of constitutional dimension. The Advisory Committee to the Federal Rules of Criminal Procedure amended Rule 11(c)(2) in 1974 from the requirement that the court inform a defendant of the "consequences of the plea" to the current, more explicit requirement, the objective being "to insure that a defendant knows what minimum sentence the judge *must* impose and what maximum sentence the judge *may* impose." Advisory Committee Notes to 1974 Amendment. Since the purpose of plea bargaining from the defendant's point of view is to position himself so that he will receive the least possible sentence, reliable information about the possible sentencing range is mandatory.

The trial judge's failure to personally inform De La Paz that his offense could subject him to a maximum of twenty years imprisonment was not a mere technical violation. In this case, since De La Paz was not informed of the potential twenty years by any other source on the record before the court accepted his plea, the error resulted in a plea colloquy that was inconsistent with the rudimentary demands of fair procedure.

Defense counsel's testimony that this information was provided prior to the plea colloquy cannot cure the court's error in its failure to advise the defendant of the consequences of his plea. To rule otherwise would delegate a judge's responsibility for the inquiry to defense counsel. Accordingly, it is

ADJUDGED that the recommendation of the magistrate is ADOPTED. The court orders that petitioner De La Paz's guilty plea be VACATED and remands this case

to give De La Paz an opportunity to either plead guilty or proceed to trial.[7]

DONE AND ORDERED.

---

7. The court notes that De La Paz was informed at the evidentiary hearing that this may be a Pyrrhic victory. The court instructed De La Paz that it is quite likely that he could receive a sentence at the new proceeding which exceeds the twelve years he is currently serving.