Fidel GARCIA–TRIGO,
Petitioner-Appellant,

v.

UNITED STATES of America,
Respondent-Appellee.

No. 81–2135
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

March 22, 1982.

Lee J. Teran, San Antonio, Tex., for petitioner-appellant.

John M. Potter, Asst. U. S. Atty., Houston, Tex., for respondent-appellee.

Before BROWN, POLITZ and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

On September 5, 1980, appellant, Fidel Garcia-Trigo, was arrested by officers of the United States Border Patrol driving a vehicle in which several other aliens were passengers. They were read their "*Miranda*" rights in English and Spanish as a group. Each of these, including appellant, signed a Spanish language statement indicating that these rights were understood. Part of this statement was a "Request for Return to Mexico", which was also signed separately by the appellant. Appellant remained in jail in Hebbronville, Texas, from sometime about the middle of the night September 5 until Monday, September 8.

On September 8, Garcia-Trigo and the other aliens arrested with him were brought before a United States Magistrate in Laredo, Texas. He was charged with the offense of "unlawfully entering the United States by wading the river, 8 U.S.C. § 1325." The others arrested with him were also charged with this offense, with one exception not relevant to appellant's situation. Appellant and the others were in essence arraigned as a group by the magistrate. Appellant, pleading separately, pled guilty and was sentenced to sixty days in jail. He has served this sentence.

The day after Garcia-Trigo's plea of guilty and sentence, while he was in custody, his wife telephoned the border patrol and notified them that instead of being an undocumented alien, appellant in fact was an authorized permanent resident of the United States and had lived in this country for ten years. At this point, it became obvious that appellant was in more serious legal difficulty since he was now subject to possible deportation. He has now been served with an Order to Show Cause why he should not be deported under 8 U.S.C. § 1251(a)(2) (entry without inspection).

Appellant brought this proceeding seeking to vacate his conviction by way of a Writ of Error Coram Nobis. 28 U.S.C. § 1651. His basic assertion is that in his arraignment and plea of guilty, the strict requirements of Fed.R.Crim.P. 11 were not followed. He particularly singles out assertions that the nature of his offense and consequences of his plea of guilty were not adequately described to him and that he was not informed that he was entitled to be supplied with an attorney.

The record reveals that the full and complete requirements of Rule 11 were not followed. If this were an appeal from a conviction, it is possible that the conviction would have to be reversed as not in compliance with each of the core concerns of the rule. *United States v. Dayton*, 604 F.2d 931 (5th Cir. 1979) (en banc). It is not necessary, however, to evaluate the entire record of the proceedings on September 8, 1981, with this in mind. We do not imply that the departure from strict step by step compliance with Rule 11 must be viewed as having resulted in a serious miscarriage of justice in this case. Rather, *Dayton* also recognizes that a full technical compliance is not necessary if the errors are harmless. *Id.* at 939.

█ What is critical in this case is the fact that a collateral attack upon a criminal conviction demands a high standard of proof by the petitioner that fundamental rights were violated, and also petitioner must show some present or prospective adverse effect. *Cline v. United States*, 453

F.2d 873 (5th Cir. 1972). The proceedings must be so fundamentally defective as to result in a "complete miscarriage of justice", or be inconsistent with the rudimentary demands of fair procedure. "... [C]ollateral relief is not available when all that is shown is a failure to comply with the formal requirements of the Rule." *United States v. Timmreck*, 441 U.S. 780, 784, 99 S.Ct. 2085, 2087, 60 L.Ed.2d 634 (1979); *Allen v. United States*, 634 F.2d 316, 317 (5th Cir. 1981).

The critical findings of fact by Judge Kazen in the district court with respect to the procedures followed in the arraignment and plea of guilty and the possible resulting prejudice bear repetition in full:

.　　.　　.　　.　　.

6. On Monday, September 8, 1981, Petitioner was brought before the Honorable Tom N. Goodwin, United States Magistrate, in Laredo, Texas. He was charged with the offense of "unlawfully entering the United States by wading the river", in violation of 8 U.S.C. § 1325. This crime is a petty offense, as that term is defined in 18 U.S.C. § 1(3). Petitioner was arraigned along with five other aliens charged with the identical offense and a sixth alien charged with obtaining entry into the United States by presentation of a counterfeit immigration form.

7. The defendants on that occasion were essentially arraigned as a group. The Magistrate advised the Petitioner that he was charged with entering the United States "illegally by wading". Each defendant was asked to plead separately and Petitioner pled guilty. Petitioner and the others were told that they had the right to an attorney and that if they did not have funds with which to hire an attorney, the Magistrate would appoint an attorney without charge. The defendants were also told of their right to ask for trial in the district court. They were also told of the maximum punishment allowed by law and were generally asked if their guilty plea was entered freely and voluntarily. All of these proceedings were translated in the Spanish language by Mrs. Beatriz Zapata, the full-time interpreter who serves not only the Magistrate's court but also this Court. According to the transcript and tape of the proceedings, Petitioner was also told, albeit by the interpreter, that he had the right to plead innocent, that he had the right to trial by jury in the district court (which he did not), the right to remain silent and to not incriminate himself, the right to confront and cross-examine witnesses brought against him, the right to call his own witnesses, and was again told of his right to have an attorney appointed without charge. The Petitioner indicated his understanding at the time. The Petitioner was specifically asked about where he was taking the other four aliens who were found in his vehicle at the time of his arrest. The Petitioner replied that he was taking them to Houston but was not intending to charge a fee for this service.

.　　.　　.　　.　　.

9. According to Petitioner's testimony, the Spanish language translation of everything said in court on September 8, 1980 was complete and accurate. He claims that he understood parts of what was said but did not understand other parts because he was confused and embarrassed. As a specific example, Petitioner indicates that he distinctly remembers being advised of his right to an attorney but he did not understand that the court would appoint such an attorney free of charge if he could not afford to pay. Nevertheless, this advice was given to Petitioner twice during the proceedings at the same time that he was told of his right to counsel.

10. Prior to the beginning of the court proceedings on September 8, Border Patrol Officer Horacio Vela explained to Petitioner the procedure for consenting to jurisdiction of Magistrate's court and waiving a hearing in district court. At that time, Petitioner was told that he was only being charged with the minor offense of illegal entry, as contrasted with the more serious offense of transporting undocumented aliens, which was originally contemplated at the time of Petitioner's arrest.

Finally, petitioner admitted that he did enter the country by wading the river in

the company of the aliens whom he later was transporting.

These findings are clearly supported in the record. We are led to the inescapable conclusion that the court was correct in denying the application for the Writ of Error Coram Nobis. There was substantial compliance with Rule 11. There was no showing that appellant's rights were violated in any fundamental way in the judicial proceedings under which he received and then served out the sixty day sentence. He is not now in custody. The district court was justified in concluding that the facts of this case "do not present exceptional circumstances where the need for the remedy afforded by the Writ of Error Coram Nobis is apparent." Finally, in view of the fact that this is a collateral attack and his rights were not seriously prejudiced, the possible effect that his conviction of this petty offense may have upon his immigration status is a collateral "consequence" that need not have been the subject of an explanation to appellant at the time of the arraignment and guilty plea. *United States v. Dayton, supra* at p. 937.

The denial of the Writ of Error Coram Nobis by the district court is

AFFIRMED.