**The PEOPLE of the State of Colorado, Petitioner,**

v.

**Jose Borcella POZO, Respondent.**

**No. 85SC319.**

Supreme Court of Colorado,
En banc.

Nov. 9, 1987.

Rehearing Denied Dec. 21, 1987.

---

524

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Cynthia Jones, Asst. Atty. Gen., Denver, for petitioner.

Ken Stern, Denver, for respondent.

Richard A. Hostetler, Denver, for amicus curiae American Civil Liberties Union.

Ann Allott, Lorna Rogers Burgess, Dan Kowalski, Littleton, for amicus curiae American Immigration Lawyers Assn.

Larry Pozner & Associates, P.C., Shelley Gilman, Denver, for amicus curiae Colorado Criminal Defense Bar.

David F. Vela, Colorado State Public Defender, Douglas D. Barnes, Deputy State Public Defender, Denver, for amicus curiae Colorado State Public Defender's Office.

KIRSHBAUM, Justice.

In *People v. Pozo*, 712 P.2d 1044 (Colo. App.1985), the Court of Appeals reversed and remanded an Arapahoe County District Court order denying two motions to withdraw guilty pleas filed by the respondent, Jose Borcella Pozo, under Crim.P. 35(c). The Court of Appeals held that Pozo received ineffective assistance of counsel at the time he entered the pleas because his attorney did not inform him of the possible deportation consequences that would flow from the pleas. We granted the People's petition for certiorari to review that holding,[1] and now reverse and remand the case to the Court of Appeals with instructions to remand the case to the trial court for further proceedings.

I

Pozo, an alien legally residing in the United States, came to this country from Cuba in April 1980. In October 1982, pursuant to a plea agreement, Pozo entered pleas of guilty to second degree sexual assault and to escape. Pozo received a sentence to the Department of Corrections of two years for the escape conviction and a consecutive sentence of two years and six months for the sexual assault conviction. In May 1983, after a detainer was filed against him by the Immigration and Naturalization Service,[2] Pozo filed motions to vacate the judgments of conviction under Crim.P. 35(c). He asserted: (1) that he was not adequately advised of, nor did he understand the elements of the charges against him when he entered the pleas;[3] and (2) that he did not receive effective assistance of counsel because his trial counsel did not advise him of the possible deportation consequences of his guilty pleas.

A hearing on these motions was held in June 1983. Pozo testified through an interpreter that in October 1982 he had not been aware of any possible deportation consequences of his guilty pleas and that he would not have entered such pleas had he been aware of those consequences. An affidavit signed by Pozo's trial counsel, stating that he had not discussed the possible deportation consequences of the guilty pleas with Pozo, was introduced into evidence. The trial court found that prior to entering the guilty pleas Pozo had not discussed deportation consequences with his trial counsel or any other counsel and was not aware of such consequences. However, the trial court concluded that Pozo had been represented by competent and effective counsel. The Court of Appeals concluded that Pozo had been denied effective assistance of counsel, reversed the trial court's ruling and remanded the case to the trial court with directions to reinstate the original charges and allow Pozo to plead anew.

II

A plea of guilty effects a waiver of fundamental rights and, therefore, must be knowingly, intelligently and voluntarily made to be valid. *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203

---

1. The Colorado State Public Defender filed a brief as amicus curiae urging reversal of the judgment of the Court of Appeals. The American Civil Liberties Union, the Colorado Criminal Defense Bar and the American Immigration Lawyers Association filed briefs as amici curiae urging affirmance of the judgment of the Court of Appeals.

2. Pursuant to 8 U.S.C. § 1251(a)(4) (1982) an alien who is convicted of a crime of moral turpitude within five years of entry into this country may be deported.

3. Pozo testified at the hearing on his Crim.P. 35(c) motion that, despite his claims of innocence, he entered the guilty pleas because his trial counsel rushed him and he did not fully understand the proceedings. The trial court found no merit in Pozo's claim that his pleas were invalid on this basis. Pozo did not appeal this ruling.

(1985); *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *see also People v. Mozee*, 723 P.2d 117 (Colo.1986). Under the sixth amendment to the United States Constitution and article II, section 16 of the Colorado Constitution, the voluntariness of a guilty plea entered by a defendant represented by counsel depends in part upon whether counsel's advice "was within the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970), *quoted in Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203; *People v. Blalock*, 197 Colo. 320, 592 P.2d 406 (1979). A defendant who enters a guilty plea cannot later claim the plea was involuntary merely because counsel's advice was wrong, so long as such advice is within general bounds of reasonable competence. *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763.

In *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203, the Supreme Court applied the two-part test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), to a sixth amendment claim of ineffective assistance of counsel in connection with the entry of a guilty plea. Under *Strickland*, a defendant claiming a violation of the constitutional right to representation by competent counsel must show that his attorney's performance fell below an objective standard of reasonableness and that the deficient performance resulted in prejudice to the defendant. We have previously indicated approval of the *Strickland* test in connection with ineffective assistance of counsel claims based on article II, section 16, of Colorado's Constitution. *See Hutchinson v. People*, 742 P.2d 875 (Colo.1987). Pozo's constitutional claims must be considered in light of that standard.

■ It is well settled that a trial court is not required to advise a defendant *sua sponte* of potential federal deportation con-

sequences of a plea of guilty to a felony charge when accepting such plea.[4] *E.g., Downs–Morgan v. United States*, 765 F.2d 1534, 1537–38 (11th Cir.1985); *United States v. Russell*, 686 F.2d 35, 39 (D.C.Cir. 1982); *Garcia–Trigo v. United States*, 671 F.2d 147, 150 (5th Cir.1982); *Fruchtman v. Kenton*, 531 F.2d 946, 949 (9th Cir.), *cert. denied*, 429 U.S. 895, 97 S.Ct. 256, 50 L.Ed. 2d 178 (1976); *Michel v. United States*, 507 F.2d 461, 465 (2d Cir.1974); *Tafoya v. State*, 500 P.2d 247, 251 (Alaska 1972), *cert. denied*, 410 U.S. 945, 93 S.Ct. 1389, 35 L.Ed.2d 611 (1973); *State v. Chung*, 210 N.J.Super. 427, 510 A.2d 72, 75 (1986); *Commonwealth v. Wellington*, 305 Pa.Super. 24, 451 A.2d 223, 224 (1982); *State v. Malik*, 37 Wash.App. 414, 680 P.2d 770, 772 (1984). This rule is grounded in the notion that in accepting a plea of guilty a trial court is not required to ascertain the defendant's knowledge or understanding of collateral consequences of the conviction. *E.g., Downs–Morgan v. United States*, 765 F.2d 1534; *Tafoya v. State*, 500 P.2d 247 (Alaska 1972), *cert. denied*, 410 U.S. 945, 93 S.Ct. 1389, 35 L.Ed.2d 611 (1973). The trial court is required to advise the defendant only of the direct consequences of the conviction to satisfy the due process concerns that a plea be made knowingly and with full understanding of the consequences thereof.

■ Sixth amendment constitutional standards requiring effective assistance of counsel involve examination of quite different considerations, however. One who relies on the advice of a legally trained representative when answering criminal charges is entitled to assume that the attorney will provide sufficiently accurate advice to enable the defendant to fully understand and assess the serious legal proceedings in which he is involved. *See Hawkman v. Parratt*, 661 F.2d 1161 (8th Cir.1981). While justice does not demand errorless representation, *People v. Velasquez*, 641

**4.** Six states have enacted statutes which require trial courts to inform alien defendants of possible deportation consequences of guilty pleas. Cal. Penal Code § 1016.5 (West 1985); Conn. Gen.Stat.Ann. § 54–1j (West 1987); Mass.Gen. Laws Ann. ch. 278, § 29D (West 1981); Or.Rev. Stat. § 135.385(2)(d) (1983); Tex.Code Crim. Proc.Ann. art. 26.13(a)(4) (Vernon 1987); Wash. Rev.Code Ann. § 10.40.200 (1985).

P.2d 943 (Colo.), *cert. denied,* 459 U.S. 805, 103 S.Ct. 28, 74 L.Ed.2d 43 (1982), attorneys must satisfy minimal standards of competency to render effective and, therefore, constitutionally acceptable representation. *Strickland,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. As noted in *Strickland, Lockhart* and *Hutchinson,* the conduct of attorneys must by necessity be considered on a case-by-case basis in light of objective standards of minimally acceptable levels of professional performance prevailing at the time of the challenged conduct. The duty of counsel is, in essence, the duty to act as any reasonable attorney would act in the same circumstances. Thus, questions regarding the type of conduct or communication required of an attorney representing a client can rarely be answered by abstract concepts. *See Strickland,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. From this perspective, it is not surprising that courts considering the issue of whether defense counsel has a duty to advise alien clients of potential deportation consequences have reached conflicting results.[5] *Compare People v. Padilla,* 151 Ill.App.3d 297, 104 Ill.Dec. 522, 502 N.E.2d 1182 (1986) (failure to advise of deportation consequences constitutes ineffective assistance of counsel), *appeal denied,* 114 Ill.2d 554, 108 Ill.Dec. 423, 508 N.E.2d 734 (1987) *and Commonwealth v. Wellington,* 305 Pa.Super. 24, 451 A.2d 223 (1982) (counsel has a duty to inquire into and advise alien defendant of possible deportation consequences) *with Tafoya v. State,* 500 P.2d 247, 251 (Alaska 1972) (alien defendant received effective assistance of counsel despite counsel's failure to advise of deportation consequences), *cert. denied,* 410 U.S. 945, 93 S.Ct. 1389, 35 L.Ed.2d 611 (1973) *and State v. Ginebra,* 511 So.2d 960 (1987) (counsel's failure to advise client of the collateral consequence of deportation does not constitute ineffective assistance of counsel) *and Mott v. State,* 407 N.W.2d 581 (Iowa 1987) (failure to advise alien defendant of collateral consequences cannot provide basis for a claim of ineffective assistance of counsel).

We are not prepared to state in absolute terms, as did the Court of Appeals, that an attorney has a duty to advise an alien client of the possible deportation consequences of a guilty plea. Nor can we conclude, as the trial court did, that an attorney has no such duty. The general issue framed by Pozo's Crim.P. 35(c) motions was whether he was denied effective assistance of counsel. Whether counsel adequately represented Pozo in view of the lack of advice concerning possible deportation consequences depends initially on whether counsel had a duty to apprise himself of this aspect of immigration law. If no such duty existed, counsel of course had no responsibility to discuss deportation consequences with Pozo. In essence, then, this case presents the question of whether an attorney's failure to research and investigate a particular body of law while representing a client rendered the attorney's assistance constitutionally ineffective. In cases alleging ineffective assistance of counsel, the trial court must judge the reasonableness of the attorney's conduct on the basis of all of the factual circumstances of the particular case, viewed in light of the prevailing standards of minimally acceptable professional conduct as of the time of the challenged conduct. *See Strickland,* 466 U.S. 668, 690, 104 S.Ct. 2052, 2065–66, 80 L.Ed.2d 674. Such inquiry must include an initial determination of whether the body of law was relevant to the circumstances of the client and the matters for which the attorney was retained. The inquiry must also

---

**5.** It is generally recognized that when an alien defendant enters a guilty plea based on erroneous representations as to deportation consequences, he or she will in most cases be permitted to withdraw the plea. *E.g., United States v. Briscoe,* 432 F.2d 1351 (D.C.Cir.1970) (guilty plea may be subject to attack where defendant misled by prosecutor as to deportation consequences); *People v. Correa,* 108 Ill.2d 541, 92 Ill.Dec. 496, 485 N.E.2d 307 (1984) (counsel's assurance that plea would not change immigration status constitutes ineffective assistance). *See also United States v. Russell,* 686 F.2d 35 (D.C.Cir.1982); *United States v. Santelises,* 509 F.2d 703 (2d Cir.1975). *Contra Strader v. Garrison,* 611 F.2d 61 (4th Cir.1979); *United States v. Parrino,* 212 F.2d 919 (2d Cir.) (criticized in *Briscoe*), *cert. denied,* 348 U.S. 840, 75 S.Ct. 46, 99 L.Ed. 663 (1954).

include a determination of whether the attorney had reason to believe that the area of law in question was relevant to the client and the client's legal problems. *See Strickland*, 466 U.S. 668, 691, 104 S.Ct. 2052, 2066–67, 80 L.Ed.2d 674.

The California Court of Appeals recently had occasion to consider the duty of counsel to research and investigate immigration consequences in *People v. Soriano*, 194 Cal.App.3d 1470, 240 Cal.Rptr. 328 (1987). In *Soriano*, defense counsel advised her client regarding immigration consequences despite counsel's admission that she had not fully researched the pertinent immigration law. Noting that counsel was aware that her client was an alien, and that she did not adequately investigate federal immigration law, the court concluded that defendant had been deprived of effective assistance of counsel.

Although *Soriano* is factually distinguishable from this case insofar as it involved erroneous representations by counsel, we find the court's underlying concern over counsel's failure to engage in rudimentary legal investigation compelling. In *People v. White*, 182 Colo. 417, 514 P.2d 69 (1973), this court addressed a similar problem. In *White*, the attorney in question neglected to investigate material factual circumstances of his client's case and failed to research the law concerning the crime with which his client had been charged. We concluded that the failure to perform such basic duties rendered counsel's assistance constitutionally ineffective.

In determining whether the performance of Pozo's counsel fell below an objective standard of reasonable conduct, an examination of the relevant statutes and governing law is necessary. An alien who pleads guilty to a crime involving moral turpitude is subject to deportation under 8 U.S.C. § 1251(a) (1982) which provides in part as follows:

> Any alien in the United States ... shall, upon the order of the Attorney General, be deported who—
>
> . . . .
>
> (4) is convicted of a crime involving moral turpitude committed within five years after entry and either sentenced to confinement or confined therefore [sic] in a prison or corrective institution, for a year or more, or who at any time after entry is convicted of two crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefor and regardless of whether the convictions were in a single trial.

Pozo, although a legal resident of the United States, is deemed an "alien" because he is neither a citizen nor a national of the United States. 8 U.S.C. § 1101(a)(3) (1982). Therefore, he is subject to deportation under § 1251(a)(4) because he pled guilty to second degree sexual assault within five years of entering the country.[6] *See Ng Sui Wing v. United States*, 46 F.2d 755, 756 (7th Cir.1931) (common law rape is a crime involving moral turpitude).

The harsh consequences of deportation may be averted, however, if the trial court having jurisdiction over the alien defendant recommends to the Attorney General, at the time of first imposing judgment or passing sentence or within thirty days thereafter, that the defendant not be de-

**6.** In reversing the trial court's order, the Court of Appeals remanded with directions to vacate both guilty pleas and judgments of conviction entered thereon. The charges were to be reinstated against Pozo, and he was ordered to plead anew. The brief submitted by the Colorado Defense Bar as amicus curiae observes that escape is a crime which has been recognized as not involving moral turpitude. *See In re J,* I & N Dec. 512 (1951) (escape is not a crime of moral turpitude when no specific criminal intent required by statute). The People, however, do not assert that the Court of Appeals erred in vacating both pleas, and the parties have treated both pleas as one throughout these proceedings. Furthermore, the record does not indicate what offense or offenses served as the basis for the decision to seek Pozo's deportation. In view of these circumstances, it would be inappropriate to address the question of whether escape as defined in Colorado must be deemed a crime involving moral turpitude and, if not, whether Pozo was prejudiced by his entry of a plea of guilty to that offense in light of the plea negotiations and other circumstances surrounding that decision.

ported. 8 U.S.C. § 1251(b) (1982);[7] *Janvier v. United States*, 793 F.2d 449 (2d Cir. 1986) (judicial recommendation is part of sentencing). Although Congress intended that aliens would be deported routinely for convictions of serious crimes under 8 U.S.C. § 1251(a)(4), the recommendation of the sentencing judge, properly made in accordance with 8 U.S.C. § 1251(b), is binding upon the Attorney General. *Janvier*, 793 F.2d 449, 452–53; *accord Velez–Lozano v. Immigration & Naturalization Serv.*, 463 F.2d 1305, 1308 (D.C.Cir.1972); *Haller v. Esperdy*, 397 F.2d 211, 213 (2d Cir.1968); *United States ex rel. Santarelli v. Hughes*, 116 F.2d 613, 616 (3d Cir.1940). In practice, then, a sentencing judge can prevent the deportation of a convicted alien.

■ In view of these factors, we conclude that the potential deportation consequences of guilty pleas in criminal proceedings brought against alien defendants are material to critical phases of such proceedings. The determination of whether the failure to investigate those consequences constitutes ineffective assistance of counsel turns to a significant degree upon whether the attorney had sufficient information to form a reasonable belief that the client was in fact an alien. When defense counsel in a criminal case is aware that his client is an alien, he may reasonably be required to investigate relevant immigration law. *See People v. Soriano*, 194 Cal. App.3d 1470, 240 Cal.Rptr. 328 (1987). This duty stems not from a duty to advise specifically of deportation consequences, but rather from the more fundamental principle that attorneys must inform themselves of material legal principles that may significantly impact the particular circumstances of their clients. In cases involving alien criminal defendants, for example, thorough knowledge of fundamental principles of deportation law may have significant impact on a client's decisions concerning plea negotiations and defense strategies. *See People v. Soriano*, 194 Cal. App.3d 1470, 240 Cal.Rptr. 328.

■ The record in this case does not establish whether Pozo's counsel had reason to know before the plea was entered that Pozo was an alien. At the hearing on Pozo's Crim.P. 35(c) motion, the trial court concluded that Pozo's attorney's failure to advise his client of deportation consequences did not render the attorney's assistance ineffective; thus, the trial court did not address the questions of whether the attorney had reason to know that Pozo was an alien and what the standards of minimally acceptable professional conduct were at the time. These determinations may best be performed by the trial court upon an adequate record. Furthermore, as *Strickland* indicates, a finding that defense counsel had reason to know of Pozo's alien status and failed to conduct appropriate research would not render the attorney's performance inadequate in the absence of a finding that such conduct resulted in prejudice to Pozo. The trial court made no specific findings concerning the question of prejudice—and again, the trial court is in the best position to evaluate the evidence and the credibility of witnesses with regard to this portion of the *Strickland* test.[8]

---

7. 8 U.S.C. § 1251(b) provides as follows:
   The provisions of subsection (a)(4) of this section respecting the deportation of an alien convicted of a crime or crimes shall not apply.... if the court sentencing such alien for such crime shall make, at the time of first imposing judgment or passing sentence, or within thirty days thereafter, a recommendation to the Attorney General that such alien not be deported, due notice having been given prior to making such recommendation to representatives of the interested State, the Service, and prosecution [sic] authorities, who shall be granted an opportunity to make representations in the matter. The provisions of this subsection shall not apply in the case of

any alien who is charged with being deportable from the United States under subsection (a)(11) of this section.

8. In considering whether a defendant who challenges a previously entered guilty plea on the basis of ineffective assistance of counsel has suffered prejudice, trial courts must focus upon whether counsel's conduct affected the outcome of the plea process. *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). In *Hill* the Supreme Court observed that, "in order to satisfy the [*Strickland*] prejudice requirement, the defendant must show that there is some reasonable probability that but for counsel's errors, he would not have pleaded guilty and

Because critical determinations remain to be made before a conclusion concerning Pozo's claim of ineffective assistance of counsel can be made, the judgment of the Court of Appeals must be reversed and the case must be returned to the trial court for further proceedings.

### III

For the foregoing reasons, the judgment of the Court of Appeals is reversed and the case is remanded to the Court of Appeals with directions to remand the case to the trial court for further proceedings consistent with the views expressed herein.

ERICKSON, J., dissents; VOLLACK, J., joins in the dissent.

ROVIRA, J., dissents; ERICKSON and VOLLACK, JJ., join in the dissent.

ERICKSON, Justice, dissenting:

I join the dissent of Justice Rovira but write separately because I believe that the respondent, Pozo, failed to establish, and did not carry the burden of proving, the allegations contained in his Crim.P. 35(c) motion. *Bresnahan v. People*, 175 Colo. 286, 487 P.2d 551 (1971); *see People v. McClellan*, 183 Colo. 176, 515 P.2d 1127 (1973); *Lamb v. People*, 174 Colo. 441, 484 P.2d 798 (1971); *Normand v. People*, 165 Colo. 509, 440 P.2d 282 (1968).

The issue of ineffective assistance of counsel, as addressed by the majority, goes beyond the issues resolved in the trial court. The dissent by Justice Rovira does not review and analyze the effectiveness of defense counsel in this case. From my review of the record, I believe the trial court was correct in holding that the de-

fendant's claim of ineffective assistance of counsel was without merit.

I am authorized to say that VOLLACK, J., joins in this dissent.

ROVIRA, Justice, dissenting:

I respectfully dissent.

The majority holds today that an attorney's failure to inform his client of the possible deportation consequences of a guilty plea may constitute ineffective assistance of counsel and thus render the plea involuntary. By casting its analysis in terms of the effectiveness of counsel and focusing on the severity of a collateral consequence of a guilty plea, the majority loses sight of the nature of the right at issue. I believe that the defendant's guilty pleas are not constitutionally infirm and would reverse the holding of the court of appeals and affirm the trial court's order.

The defendant pleaded guilty to one count of second-degree sexual assault and one count of escape on October 25, 1982. He received sentences of two years and two and one-half years to be served consecutively. On May 17, 1983, after a detainer was filed against him by the Immigration and Naturalization Service, the defendant filed a motion for post-conviction relief under Crim.P. 35(c), claiming that he was denied effective assistance of counsel because his attorney had not advised him of the possible deportation consequences of his guilty pleas. The trial court disagreed and denied the motion. The court of appeals reversed.

At the outset I should note my agreement with that part of the majority opinion which holds that a trial court is not required to advise a defendant of collateral

would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. at 59, 106 S.Ct. at 370.

Of course, the particular posture of a given case can affect the focus of inquiry into a claim of prejudice resulting from conduct that fell below an objectively reasonable minimal level of representation. For example, the court observed in *Strickland* that a trial court considering a post-conviction challenge to a guilty verdict must determine whether there is a reasonable probability that, absent counsel's errors, the factfinder would have entertained a reason-

able doubt about the defendant's guilt, while a court considering a challenged death sentence must determine whether a reasonable probability exists that, absent counsel's errors, the sentencer would have declined to impose that penalty. *Strickland*, 466 U.S. 668, 695, 104 S.Ct. 2052, 2068–69, 80 L.Ed.2d 674 (1983). Whatever direction the inquiry into prejudice might take, determination of that issue will invariably involve questions of credibility for resolution by the trial court.

consequences of his conviction in order that there be a valid plea of guilty. Further, I agree that potential federal deportation is a collateral and not a direct consequence of a plea of guilty.

However, I do not agree with the balance of the majority opinion which requires the trial court to evaluate the ineffectiveness of counsel claim by (1) determining whether counsel had a duty to apprise himself of immigration law; (2) whether failure to do so renders the attorney's assistance constitutionally ineffective; and (3) judge the reasonableness of the attorney's conduct, viewed as of the time of the conduct.

The interest at stake in a Crim.P. 11 proceeding is whether the defendant voluntarily entered a plea of guilty to the crime for which he was charged.

In *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), the defendant sought post-conviction relief on the ground that had he known of a subsequent Supreme Court decision at the time of his plea, he never would have pleaded guilty. The Supreme Court rejected his argument stating:

> Central to the plea and the foundation for entering judgment against the defendant is the defendant's admission in open court that he committed the acts charged in the indictment.

397 U.S. at 748, 90 S.Ct. at 1468. The Supreme Court also said:

> A plea of guilty entered by one fully aware of *direct* consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats ... misrepresentation ... or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business.

397 U.S. 742, 755, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747 (1970), quoting *Shelton v. United States,* 246 F.2d 571, 572 n. 2 (5th Cir.1957), *rev'd on other grounds,* 356 U.S. 26, 78 S.Ct. 563, 2 L.Ed.2d 579 (1958) (emphasis added).

There is no contention by Pozo that he did not understand the direct consequences of his plea or that his plea was invalid because of any threat, misrepresentation, or other impropriety. Therefore, he is left with his "but/for argument," *i.e.,* but/for the failure of my lawyer in not advising me that I might be deported if I pleaded guilty, I would not have pleaded guilty.

An ineffectiveness of counsel argument is immaterial with respect to a guilty plea except to the extent that it relates to the issues of voluntariness and understanding. *Lee v. Hopper,* 499 F.2d 456, 462 (5th Cir.), *cert. denied,* 419 U.S. 1053, 95 S.Ct. 633, 42 L.Ed.2d 650 (1974). A plea is considered knowing and voluntary when the defendant has been advised of all consequences which have a "definite, immediate, and largely automatic effect on the range of [a defendant's] punishment." *People v. Heinz,* 197 Colo. 102, 106, 589 P.2d 931, 933 (1979), quoting *Cuthrell v. Director,* 475 F.2d 1364 (4th Cir.), *cert. denied,* 414 U.S. 1005, 94 S.Ct. 362, 38 L.Ed.2d 241 (1973).

Our inquiry should be directed, then, solely to determine whether he understood the direct consequences of his plea. Clearly, as the majority acknowledges, deportation is a collateral consequence of conviction and not a direct consequence.

I agree with the substantial majority of courts that have utilized the collateral/direct consequence distinction to reject the claim that a defendant's ignorance of deportation consequences reflects ineffective assistance of counsel and renders his plea involuntary. *See United States v. Campbell,* 778 F.2d 764 (11th Cir.1985); *United States v. Gavilan,* 761 F.2d 226 (5th Cir. 1985); *United States v. Santelises,* 509 F.2d 703 (2d Cir.1975); *United States v. Parrino,* 212 F.2d 919 (2d Cir.), *cert. denied,* 348 U.S. 840, 75 S.Ct. 46, 99 L.Ed. 663 (1954); *Government of the Virgin Islands v. Pamphile,* 604 F.Supp. 753 (D.V.I.1985); *Tafoya v. State,* 500 P.2d 247 (Alaska 1972), *cert. denied,* 410 U.S. 945, 93 S.Ct. 1389, 35 L.Ed.2d 611 (1973); *State v. Ginebra,* 511 So.2d 960 (Fla.1987); *Mott v. State,* 407 N.W.2d 581 (Iowa 1987); *State v. Chung,* 210 N.J.Super. 427, 510 A.2d 72 (App.Div.1986); *State v. Malik,* 37 Wash. App. 414, 680 P.2d 770 (1984); *State v.*

*Santos,* 136 Wis.2d 528, 401 N.W.2d 856 (Ct.App.), *review denied,* 411 N.W.2d 140 (Wis.1987). *But see United States v. Shapiro,* 16 F.R.D. 499 (E.D.Wis.), *appeal dismissed,* 222 F.2d 836 (7th Cir.1955); *People v. Padilla,* 151 Ill.App.3d 297, 104 Ill.Dec. 522, 502 N.E.2d 1182 (1986), *appeal denied,* 114 Ill.2d 554, 108 Ill.Dec. 423, 508 N.E.2d 734 (1987); *Commonwealth v. Wellington,* 305 Pa.Super. 24, 451 A.2d 223 (1982).

The collateral/direct consequence distinction reflects the nature of the rights a defendant has in pleading guilty. The Supreme Court identified the bases for those rights in the following words:

> A defendant who enters such a [guilty] plea simultaneously waives several constitutional rights, including his privilege against compulsory self-incrimination, his right to trial by jury, and his right to confront his accusers. For this waiver to be valid under the Due Process Clause, it must be "an intentional relinquishment of a known right or privilege." *Johnson v. Zerbst,* 304 U.S. 458, 464 [58 S.Ct. 1019, 1023, 82 L.Ed. 1461] (1938). Consequently, if a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void. Moreover, because a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts.

*McCarthy v. United States,* 394 U.S. 459, 466, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (1969).

In addition, a defendant must understand the penalty the legislature has fixed for the criminal conduct to which he is pleading guilty. Absent such an understanding, the defendant may plead guilty under a misguided expectation—however induced—that his plea will result in some measure of sentencing leniency.

None of those reasons supports the rule the majority adopts today. It cannot be disputed that a defendant may attach substantial importance to some collateral consequences of a guilty plea. We have never before held, however, that the potential importance of a particular collateral consequence may give rise to a constitutional right to be apprised of that consequence by defense counsel. The loss of one's right to vote, exclusion from military service, or other disabilities attached to a felony conviction may be just as harsh a consequence to a citizen defendant as deportation may be to an alien, yet courts have consistently denied that defendants have a constitutional right to be informed of the former collateral consequences. *See generally* J. Bond, *Plea Bargaining & Guilty Pleas* §§ 3.38–.49 (2d Ed.1983); Comment, *Collateral Consequences of Guilty Pleas in the Federal Criminal Justice System,* 16 Harv.C.R.–C.L.L.Rev. 157 (1981).[1] The majority opinion focuses on the potential deportation consequences of guilty pleas in criminal proceedings, and thereby opens the door to innumerable challenges to pleas

1. Although deportation has an undeniable impact on a defendant's life, so do other collateral consequences which often flow from a guilty plea. Failure to inform the defendant of the following consequences of his guilty plea has been held not to render the plea invalid. *Wright v. United States,* 624 F.2d 557, 561 (5th Cir.1980) (a plea's possible enhancing effects on a subsequent sentence); *Moore v. Hinton,* 513 F.2d 781 (5th Cir.1975) (suspension of auto license); *United States v. Crowley,* 529 F.2d 1066, 1072 (3d Cir.), *cert. denied,* 425 U.S. 995, 96 S.Ct. 2209, 48 L.Ed.2d 820 (1976) (loss of civil service job as result of felony conviction); *Cuthrell v. Director,* 475 F.2d 1364, 1366 (4th Cir.), *cert. denied,* 414 U.S. 1005, 94 S.Ct. 362, 38 L.Ed.2d 241 (1973) (institution of separate civil proceedings against defendant for commitment to a mental health facility); *Hutchison v. United States,* 450 F.2d 930, 931 (10th Cir.1971) (loss of good time credit); *Waddy v. Davis,* 445 F.2d 1 (5th Cir.1971) (disenfranchisement); *United States v. Vermeulen,* 436 F.2d 72, 75 (2d Cir. 1970), *cert. denied,* 402 U.S. 911, 91 S.Ct. 1390, 28 L.Ed.2d 653 (1971) (possibility of imposition of consecutive sentences); *Meaton v. United States,* 328 F.2d 379 (5th Cir.1964), *cert. denied,* 380 U.S. 916, 85 S.Ct. 902, 13 L.Ed.2d 801 (1965) (deprivation of rights to vote and to travel abroad); *United States v. Cariola,* 323 F.2d 180 (3d Cir.1963) (deprivation of right to vote in some jurisdictions); *Redwine v. Zuckert,* 317 F.2d 336 (D.C.Cir.1963) (possibility of undesirable discharge from the armed forces); *State v. Riggins,* 466 A.2d 981 (N.J.Super.Ct.App.Div. 1983) (loss of employment).

based on the defendant's ignorance of other serious collateral consequences.

In *United States v. Timmreck*, 441 U.S. 780, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1978), the defendant sought habeas corpus relief and alleged that his guilty plea was involuntary because he was unaware of the mandatory parole term that would result from his conviction. A unanimous Supreme Court denied relief, and concluded with a caution that bears repeating here:

> Every inroad on the concept of finality undermines confidence in the integrity of our procedures; and, by increasing the volume of judicial work, inevitably delays and impairs the orderly administration of justice. The impact is greatest when new grounds for setting aside guilty pleas are approved because the vast majority of criminal convictions result from such pleas. Moreover, the concern that unfair procedures may have resulted in the conviction of an innocent defendant is only rarely raised by a petition to set aside a guilty plea.

441 U.S. at 784, 99 S.Ct. at 2087–88, quoting *United States v. Smith*, 440 F.2d 521, 528–29 (7th Cir.1971) (Stevens, J., dissenting).

The defendant has never claimed that he did not commit the crimes that he pleaded guilty to. Nothing has been brought to my attention which gives me reason to question the reliability of defendant's guilty plea as establishing his actual commission of the crimes charged.

An additional problem with the majority opinion is the burden it places on the trial courts to determine whether an attorney whose client is an alien has reasonably investigated relevant immigration law. Maj. op. at 529. The majority opinion states that "an examination of the relevant statutes and governing law" is necessary to determine "whether the performance of Pozo's counsel fell below an objective standard of reasonable conduct." Maj. op. at 528. It then considers 8 U.S.C. § 1251(a) and (b) (1982), and concludes that a sentencing judge can prevent the deportation of a convicted alien.

A cursory review of the United States immigration law and the applicable regulations suggests that the trial court will be required to hold an extensive evidentiary hearing in order to determine whether an attorney's performance was "reasonable."

United States immigration law is complex and the regulations and judicial decisions interpreting the law represent a body of knowledge to which some attorneys devote their full time and attention. A public defender or attorney in private practice who represents defendants in criminal cases should not be found to be "ineffective" for failing to advise his client about a body of civil law which is not directly related to the issues involved in a Crim.P. 11 hearing. The majority, by opening the Pandora's box of collateral consequences, has further burdened an overtaxed judicial system. It has also provided defendants who have knowingly, intelligently, and voluntarily entered pleas of guilty an opportunity to withdraw those pleas, sometimes years after witnesses and evidence have been lost, on the ground that "but/for" their attorney's failure to advise of collateral consequences they would not have entered such a plea.

Finally, although the majority acknowledges the unanimous rule that the trial court need not advise the defendant sua sponte of his possible deportation following conviction, maj. op. at 526, that rule is shorn of meaning by the majority's decision today. The majority holds, in effect, that an alien defendant has a constitutional right to know the possible deportation consequences of his guilty plea. Maj. op. at 529. To say that it is the duty of defendant's counsel—and not of the trial court— to inform the defendant of those consequences is of little practical effect; a judge who diligently follows the requirements of Crim.P. 11 but does not inquire into the defendant's alienage and knowledge of deportation consequences no longer ensures that the guilty plea he accepts is being made voluntarily. As we explained in *People v. Quintana*, 634 P.2d 413 (1981):

> Rule 11 contemplates that the transcribed colloquy between the court and the defendant will eliminate the need to

resort to a subsequent fact-finding proceeding in order to determine whether a guilty plea was voluntarily and understandingly made.

634 P.2d at 417 n. 1. *See also McCarthy*, 394 U.S. at 467, 89 S.Ct. at 1171.

Accordingly, I would affirm the district court's order.

I am authorized to say that ERICKSON and VOLLACK, JJ., join in this dissent.