23CA1695 Peo v Leyba 11-27-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA1695
Jefferson County District Court No. 09CR3291
Honorable Diego G. Hunt, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Marcus Anthony Leyba,

Defendant-Appellant.

ORDER AFFIRMED

Division VI
Opinion by JUDGE HAWTHORNE*
Welling and Brown, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 27, 2024

Philip J. Weiser, Attorney General, William G. Kozeliski, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Krista A. Schelhaas, Alternate Defense Counsel, Littleton, Colorado, for
Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1     Defendant, Marcus Anthony Leyba, appeals the trial court's order denying his Crim. P. 35(c) motion for postconviction relief. He contends that he received ineffective assistance of counsel during plea bargaining. We affirm.

## I.     Background

¶ 2     A jury found Leyba guilty of class 1 felony first degree murder — victim less than twelve years of age, and class 2 felony child abuse resulting in death. The victim was Leyba's infant daughter. The trial court imposed sentences of life in prison without the possibility of parole on the murder conviction and a concurrent forty-eight-year prison term on the child abuse conviction. A division of this court affirmed the judgment of conviction. *See People v. Leyba,* (Colo. App. No. 11CA0227, Dec. 18, 2014) (not published pursuant to C.A.R. 35(f)).

¶ 3     Leyba filed a Crim. P. 35(c) motion, in which he asserted claims of ineffective assistance of counsel, newly discovered evidence, and cumulative error. As relevant here, he alleged that the prosecution extended an offer for him to plead guilty to child abuse resulting in death and to stipulate to a forty-eight-year prison sentence in exchange for the dismissal of the first degree murder

charge. Leyba argued that he rejected the offer because his trial counsel advised him that he would be parole eligible after serving seventy-five percent of the stipulated sentence and that, had he been correctly advised that he would be parole eligible after serving fifty percent of the sentence, he would have accepted the offer.

¶ 4     The postconviction court denied the motion without a hearing but agreed to amend the mittimus to merge the child abuse conviction into the murder conviction. A division of this court affirmed the order in part, reversed it in part, and remanded the case to the postconviction court to hold an evidentiary hearing on Leyba's ineffective assistance of plea counsel claim. *See People v. Leyba*, (Colo. App. No. 18CA0806, June 11, 2020) (not published pursuant to C.A.R. 35(e)). Following an evidentiary hearing on remand, the postconviction court denied the claim. Leyba appeals this order.

## II.     Legal Authority and Standard of Review

¶ 5     "A criminal defendant is constitutionally entitled to effective assistance from his counsel." *Ardolino v. People*, 69 P.3d 73, 76 (Colo. 2003). This right to effective assistance of counsel extends to

the plea-bargaining process. *Lafler v. Cooper*, 566 U.S. 156, 162 (2012); *Missouri v. Frye*, 566 U.S. 134, 144 (2012).

¶ 6    "In order to prevail on an ineffective assistance of counsel claim, a defendant must prove that 1) counsel's performance was deficient and 2) the deficient performance prejudiced the defense." *Dunlap v. People*, 173 P.3d 1054, 1062 (Colo. 2007). The failure to prove one of these two prongs defeats an ineffective assistance claim. *People v. Thompson*, 2020 COA 117, ¶ 50.

¶ 7    To establish deficient performance, a defendant must prove that counsel's representation "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). "[J]udicial scrutiny of counsel's performance must be highly deferential, evaluate particular acts and omissions from counsel's perspective at the time, and indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Ardolino*, 69 P.3d at 76.

¶ 8    "Failure to correctly advise a defendant about his sentencing exposure deprives the defendant of the opportunity to make a reasonably informed decision whether to accept or reject a[] [plea] offer and constitutes deficient performance under *Strickland*."

*People v. Delgado*, 2019 COA 55, ¶ 17.  As relevant here, "[e]ligibility for parole is a collateral consequence of [a] defendant's plea, and there is no requirement in our rules or the federal rules which require that [the] defendant be advised on this subject."  *People v. Moore*, 844 P.2d 1261, 1262 (Colo. App. 1992); *see also People v. Pozo*, 746 P.2d 523, 526 (Colo. 1987).  However, depending on the factual circumstances of a particular case, counsel may be required to advise a defendant regarding the collateral consequences of a conviction.  *See Pozo*, 746 P.2d at 526-28; *People v. Chalchi-Sevilla*, 2019 COA 75, ¶ 19.

¶ 9     To establish prejudice, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome."  *Id.*

¶ 10     In the context of a plea offer having been made and rejected, a defendant must show a reasonable probability that (1) he would have accepted the plea offer if counsel had correctly advised him; (2) the prosecution would not have withdrawn the offer; (3) the court would have accepted the agreement; and (4) the conviction,

sentence, or both under the plea offer's terms would have been less severe than under the judgment and sentence that were in fact imposed. *Delgado*, ¶¶ 19-23; *see also Lafler*, 566 U.S. at 163-64; *Frye*, 566 U.S. at 147-48.

¶ 11     "Both prongs of the ineffectiveness inquiry present mixed questions of law and fact." *Dunlap*, 173 P.3d at 1063. "When reviewing a postconviction court's findings on a mixed question of law and fact, we defer to the court's findings of fact if they are supported by the record but review legal conclusions de novo." *Id.* Also, "[t]he postconviction court determines the weight and credibility to be given to the testimony of witnesses in a Crim. P. 35(c) hearing." *People v. Washington*, 2014 COA 41, ¶ 17.

### III.    Analysis

¶ 12     In its order, the postconviction court recognized that an initial question was whether a plea offer was actually conveyed by the People to either Leyba or his counsel. The court, however, did not make an explicit finding on that question and, instead, repeatedly expressed that "[i]t [was] not entirely clear to the court whether a formal offer was conveyed by the People." The court ultimately found that Leyba "arguably met *Strickland's* first prong" because "it

5

[wa]s evident from the evidence that a potential plea was discussed" and "his attorneys testified to advising Mr. Leyba that it was possible that he would have to serve 75% of his sentence."

¶ 13    The postconviction court nevertheless held that Leyba failed to establish a reasonable probability that, had he been correctly advised that he would be parole eligible after serving fifty percent of the stipulated sentence, he would have accepted the plea offer. Specifically, the court found that the evidence reflected that Leyba did not want to plead guilty to a crime he did not believe he had committed and that he wanted to fight the charges at trial.

¶ 14    The record supports the postconviction court's finding on the second *Strickland* prong . *See Thompson*, ¶ 50. At the evidentiary hearing, postconviction counsel asked Leyba, if he had been properly advised regarding parole eligibility, "[w]ould [he] have pled guilty?" Leyba answered, "Yes. I would have considered that." On appeal, Leyba characterizes this testimony as, first, an unequivocal assertion that, but for having been "misadvised," he would have accepted the plea offer and, second, an assertion that he would have considered parole eligibility when making that decision.

¶ 15     We are not persuaded by Leyba's interpretation of this

testimony and, instead, defer to the postconviction court's finding

that the answer reflected that, had he been correctly advised, Leyba

would have merely considered the plea offer.  *See Dunlap,* 173 P.3d

at 1063; *Washington,* ¶ 17.  Indeed, after this testimony,

postconviction counsel sought to clarify whether, despite still

maintaining his innocence, Leyba was "telling [them] that, based on

all that [he] kn[e]w, [he] would have pled guilty and taken this

offer?"  Leyba did not answer the question:

> People plead guilty to traffic tickets, people
> plea to stuff . . . that isn't even what they did,
> you know what I mean?  It's just part of the
> process, I guess.  But if it would have been
> told to me, this is how it is, when you do
> county time, you get sentenced to county
> time, . . . you go do your trustee pod or your
> work release or whatever, you get your day-for-
> day or your three for one, or whatever it is.
>
> It isn't like that in [the Department of
> Corrections (DOC)].  It took me ten years of
> being in DOC to figure out, man, I could
> have — if I would have took that — if it would
> have been explained to me right, I would have
> been out.  I could be out in a couple years.
>
> . . . .
>
> I could be out in less than ten years, you know
> what I mean?  I haven't got in no trouble.  I

7

> maybe got 50 days of good time taken over ten years.

And, during the subsequent cross-examination when the prosecutor suggested that Leyba would not have wanted "to plead guilty to child abuse resulting in death if that would mean a significant prison sentence," Leyba again responded, "if the timeline would have been given to me like it's supposed to be, I would have considered it."

¶ 16    It is also undisputed that Leyba maintained his innocence from the beginning of the case through the postconviction evidentiary hearing.  The record shows that, because he believed he was innocent, Leyba wanted to contest the charges at trial, and there was not a reasonable probability that, even with a correct parole eligibility advisement, he would have accepted a plea offer.

¶ 17    In recorded jail calls with family members, Leyba expressed his opposition to accepting a plea offer:

- "I couldn't imagine . . . taking a plea bargain of twenty years on something that I didn't do. . . .  Ya know, that's outrageous, ya know";

- "Ya know, for something that I didn't do . . . , I ain't gonna cop no plea";

8

- "Ya know, I couldn't imagine copping . . . a plea to twenty-two years or, ya know, something like that, . . . being gone twenty years . . . for something I can't do"; and

- "It's just hard seeing all these guys come in here, ya know, and taking these plea bargains of, ya know, twenty-two to fifty-eight years. I couldn't imagine doing that, ya know."

¶ 18    In one of these recorded jail calls, Leyba said that going to trial was his "only choice" because he had to "fight this all the way" and "go all the way with this." He also said that his counsel did not discuss a plea bargain with him because counsel "knew where [he] stood."

¶ 19    When asked at the evidentiary hearing how he felt about the proffered forty-eight-year prison sentence with the incorrect seventy-five-percent parole eligibility advisement, Leyba said he declined the offer because, "[i]n [his] eyes, . . . [he] didn't do anything . . . . [His] daughter died. And [he was] the one being held responsible."

¶ 20    Further, one of Leyba's trial attorneys testified that Leyba was not interested in the plea offer because he "ha[d] no recollection whatsoever of hurting th[e] child, and he didn't want to plead guilty

9

to something that he didn't understand or believe he had done." Leyba's other trial attorney also testified that, early on, Leyba "was clear that he wanted to fight" the charges and "take it all the way" and that, while his position on a plea deal evolved as the case progressed, Leyba did not want to take the alleged plea offer. A family member agreed that, early on, Leyba maintained that "[he was] innocent, [he was] not going to take a deal or whatever."

¶ 21 The trial prosecutor testified that defense counsel "made it very clear very early that [Leyba] was not interested in a plea agreement, that their theory of the case was that the [victim] had been . . . injured earlier in the evening" and that Leyba was not interested in engaging in plea discussions. The prosecutor further said that Leyba "had no interest in a plea agreement" because "[h]e didn't remember or believe that he had done anything wrong" and "[h]e was not going to take responsibility for killing [the victim]." The prosecutor stated that Leyba's objection to a plea agreement was "consistent . . . throughout the time this case was pending trial."

¶ 22 Accordingly, we conclude that the record supports the postconviction court's finding that Leyba failed to establish a

10

reasonable probability that, had he been correctly advised of parole eligibility, he would have accepted the plea offer.

¶ 23    Lastly, we do not address arguments raised for the first time on appeal. *See People v. Goldman*, 923 P.2d 374, 375 (Colo. App. 1996) ("Allegations not raised in a Crim. P. 35(c) motion or during the hearing on that motion and thus not ruled on by the trial court are not properly before this court for review."). Therefore, we will not consider Leyba's argument that the postconviction court failed to consider additional relevant factors including his young age at the time the plea was offered, the allegedly higher bar to succeeding at trial due to societal outrage over an infant victim, and the lower "knowingly" culpability element the prosecution would have to prove for first degree murder of a child under twelve years of age while in a position of trust to the child. We also decline Leyba's invitation to reweigh the evidence. *See Washington*, ¶ 17.

### IV.    Disposition

¶ 24    Accordingly, the order is affirmed.

JUDGE WELLING and JUDGE BROWN concur.