**STATE of Missouri, Respondent,**

v.

**Sallehuddin HASNAN, Appellant.**

**No. WD 43301.**

Missouri Court of Appeals,
Western District.

Feb. 5, 1991.

Motion for Rehearing and/or Transfer to
Supreme Court Denied April 2, 1991.

T. Jefferson Stephens, Grant City, for appellant.

David A. Baird, Maryville, for respondent.

Before GAITAN, P.J., and TURNAGE and KENNEDY, JJ.

GAITAN, Presiding Judge.

Appellant, Sallehuddin Hasnan, an alien, non-immigrant student, pled guilty at two separate times to the misdemeanors of passing bad checks in violation of Mo.Rev. Stat. § 570.120 (1986). As a result of these guilty pleas, appellant is facing federal deportation proceedings. Mr. Hasnan appeals the refusal of the trial court to grant his motion for relief from the two judgments and to set aside his guilty pleas. The gist of appellant's argument is that his pleas of guilty, made *pro se*, should be rescinded because the trial court did not inform him that deportation proceedings could result from his guilty pleas.

There are no factual issues to resolve in this case as both parties agree on the material facts. On January 28, 1986, appellant appeared *pro se* and pled guilty, under § 570.120, to the misdemeanor of passing a bad check in the amount of $10.71. The court suspended imposition of the thirty-day sentence and placed appellant on probation for one year. On December 16, 1986, after passing another bad check, this time for $17.13, appellant again pled guilty *pro se* to a second violation of § 570.120. As a result of this second guilty plea, the original sentence was executed and a second sentence of 180 days was initially suspended and appellant was placed on two year bench probation. This second sentence was executed after subsequent episodes of writing bad checks.

In both criminal proceedings above, the trial court did not inform appellant that a plea of guilty could bring about federal deportation hearings. Upon discovering the possibility of deportation proceedings, appellant filed a motion with the circuit court for relief from the judgment and to set aside his guilty pleas. The court, after hearing evidence and arguments on the motion, denied appellant's request for relief. Appellant seeks review of this decision.

■ The thrust of appellant's argument on appeal is that without disclosure of the possible consequence of deportation, the appellant could not make a knowing, intelligent guilty plea. In his postsentencing motion, appellant sought a civil remedy based upon Missouri Supreme Court Rule 74.06. There is, however, no authority that this civil remedy is appropriate within a criminal context such as this. Appellant, in essence, sought the relief stated in Rule 29.07(d), that the trial court allow him to withdraw his guilty pleas after the sentences had been imposed. Only upon a showing that it is necessary "to correct manifest injustice" can the motion court grant such relief. Rule 29.07(d); *State v. England*, 599 S.W.2d 942, 947 (Mo.App. 1980).

■ In reviewing the refusal of the motion court to allow withdrawal of the guilty pleas, we must decide whether the trial court abused its discretion or was clearly erroneous. *State v. Cowan*, 615 S.W.2d 510, 511 (Mo.App.1981). Further, the defendant bears the burden of proving, by a preponderance of the evidence, error in the motion court's ruling. *Jackson v. State*, 654 S.W.2d 105 (Mo.App.1983); *Cowan*, 615 S.W.2d at 511.

■ In rejecting the appellant's request for relief, the trial court stated that "the Court [is not] obligated to tell any defendant of every possible legal consequence to a plea of guilty." Indeed, the court's rationale is a colloquial form of the general rule that requires "the court to inform the defendant of the 'direct' consequences of his plea; [but not] the 'collateral' consequences of his plea." *Huffman v. State*, 703 S.W.2d 566, 568 (Mo.App. 1986); *see also McIntosh v. State*, 627 S.W.2d 652, 655 (Mo.App.1981) ("[no] Missouri law or precedent ... requires that the defendant be instructed in the collateral consequences of his guilty plea in order for the plea to 'stick'"); *George v. Black*, 732 F.2d 108, 110 (8th Cir.1984). Thus, in order

for the appellant to succeed, he must show that deportation hearings are a direct, and not collateral, result of a guilty plea.

Two sources yield a working definition of what constitutes a "direct," verses a "collateral," result of a guilty plea. The first is found in Missouri Supreme Court Rule 24.02(b) which outlines the "Advice to Defendant" that must be given by the court before accepting a guilty plea. Rule 24.-02(b) enumerates defendant's rights and the possible results of a guilty plea. It is logical to conclude, as have other courts confronted with this problem, that the possible results enumerated in Rule 24.02(b) are "direct" results of which the defendant must be aware before rendering a valid plea. *See Huffman*, 703 S.W.2d at 568. Given the mandatory nature of this rule, it is also logical to conclude that this list is exclusive and that all "direct" results are stated therein. Under no construction or reading of Rule 24.02(b) can deportation proceedings be found to be "direct" consequences of a guilty plea.

Caselaw provides a second definition for "direct" consequences. This caselaw definition, although more abstract than Rule 24.02(b), also yields the conclusion that deportation proceedings are a collateral consequence of a guilty plea. "The 'direct consequences' of a plea are those which definitely, immediately, and largely automatically follow the entry of a plea of guilty." *Huffman*, 703 S.W.2d at 568; *see also George v. Black*, 732 F.2d at 110. While there is no Missouri authority directly on point, Rule 24.02(b) is nearly identical to its federal counterpart, Fed.R.Crim.P. 11. *See* Committee Note, Rule 24.02(b) (1990). Accordingly, Missouri courts have held federal caselaw interpreting and applying Fed.R.Crim.P. 11, as persuasive precedent in understanding Rule 24.02(b). *See Huffman*, 703 S.W.2d at 568 (Mo.App. 1986); *Griffin v. State*, 684 S.W.2d 425, 427 (Mo.App.1984). Federal caselaw uniformly holds that deportation proceedings are a collateral result of a guilty plea and as such, need not be disclosed to a criminal defendant entering a plea of guilty.

In *Downs–Morgan v. United States*, 765 F.2d 1534, 1537–39 (11th Cir.1985), the Court was faced, within the context of Fed. R.Crim.P. 11, with the precise issue before us now. The Court stated that deportation proceedings are not a mandatory, automatic result of a guilty plea, but are instead discretionary. *Id.* at 1538. As discretionary actions, deportation proceedings do not meet the definition of "direct" consequences stated in *Huffman*. 703 S.W.2d at 568. Further, the Court in *Downs–Morgan* concluded that "[a]ll the courts considering the various versions of Rule 11 agree that it does not require the trial judge to apprise the defendant of the possible immigration consequences of his guilty plea." *Downs–Morgan*, 765 F.2d at 1538. The Court's conclusion in *Downs–Morgan* was based upon a multitude of federal and state decisions reaching the same result. *Id.* at 1538, 1539 n. 12; *see also United States v. Campbell*, 778 F.2d 764, 767 (11th Cir. 1985).

The reasoning stated in *Downs–Morgan* persuades us that deportation proceedings are a collateral consequence of a guilty plea. Thus, the motion court did not err in refusing to grant appellant's request for relief from the judgments. The circuit court, is accordingly, affirmed.

All concur.