Cecil G. **COFIELD**, Appellant,

v.

**STATE of Missouri, Respondent.**

**No. 23120.**

Missouri Court of Appeals,
Southern District,
Division One.

July 18, 2000.

Lyle M. Gregory, Harrisonville, for appellee.

Jeremiah W. (Jay) Nixon, Atty. Gen., Adriane D. Crouse, Asst. Atty. Gen., Jefferson City, for respondent.

CROW, Presiding Judge.

Cecil G. Cofield ("Movant") pled guilty to the class D felony of driving while intoxicated ("DWI"). §§ 577.010, 577.023, RSMo 1994.[1] The plea court sentenced Movant to five years' imprisonment.

Movant thereafter commenced the instant proceeding by filing a motion to vacate the conviction and sentence per Rule 24.035.[2] The motion court denied relief after an evidentiary hearing.

Movant brings this appeal from the motion court's judgment.

Movant's sole claim of error is that his guilty plea was "entered unknowingly and unintelligently" because the plea court did not accurately state the "available minimum range of punishment" at the guilty plea proceeding.

Section 577.023.4, RSMo 1994,[3] reads:

"No court shall suspend the imposition of sentence as to a ... persistent offender under this section nor sentence such person to pay a fine in lieu of a term of imprisonment ... nor shall such person be eligible for parole or probation until he has served a minimum of forty-eight consecutive hours' imprisonment, unless as a condition of such parole or probation such person performs at least ten days of community service under the supervision of the court in those jurisdictions which have a recognized program for community service."

During the guilty plea proceeding, the plea court addressed Movant. The dialogue included this:

"Q   And you understand the range of punishment on a Class D felony is minimum one day, maximum five years, and up to $5,000 fine, or both the fine and imprisonment?

A   Yes, sir.

. . . .

Q   Now ... you understand in order for this to be a Class D felony, they have to show that you have two or more prior convictions or pleas of guilty for alcoholic related offenses before it can be a Class D felony?

A   Yes, sir.

---

1. Under § 577.023.3, driving while intoxicated in violation of § 577.010 is a class D felony if the driver is a persistent offender as defined by § 577.023.1(2). The DWI charge to which Movant pled guilty invoked the persistent offender provision.

2. The version of Rule 24.035 in Missouri Rules of Criminal Procedure (1998) was in force when Movant filed his motion to vacate. References to Rule 24.035 in this opinion are to that version. A new version took effect July 1, 2000.

3. The version of § 577.023 in RSMo 1994 was in force on the date of the DWI with which Movant was charged and on the date he pled guilty. That version has since been amended.

Q And do you believe the state can prove up two or more?

A Yes, sir."

Later in the guilty plea proceeding, after the prosecutor described what the State's evidence would show, the prosecutor said:

"One other thing I just want to make clear. I think the minimum punishment on this case is two days because of the one statute that requires a minimum 48 hours incarceration when there is a prior DWI. . . . [Y]ou quoted the minimum is one day, and I think it's actually two. I just wanted to make sure that's clear on the record."

As there was no plea agreement, the plea court explained to Movant that each side would be "free to argue" whatever they chose regarding the sentence. Then, this:

"THE COURT: And the Court is going to be free to do anything all the way up to—to the maximum or down to the minimums?

MR. RATZLAFF [4]: That's correct.

Q Is that what you understand, Mr. Cofield?

A Yes, sir."

The plea court ordered a presentence investigation and scheduled sentencing for a later date.

At the sentencing hearing (some nine weeks after the guilty plea), the plea court recalled the offense to which Movant pled guilty was a class D felony and there was no plea agreement. This dialogue ensued:

"THE COURT: Which means . . . I could sentence him to five years and $5000 fine, or I could go all the way down to, I guess, probation or a fine?

MR. RATZLAFF: Right."

4. Lawyer Gary Ratzlaff represented Movant in the plea court.

5. Movant was 69 years of age when he pled guilty.

Later in the sentencing hearing, the plea court commented on the presentence investigation report:

"If I've counted right, since 1946, he's been arrested for either DWI or BAC 14 times.[5] He has about 11 convictions. In the '90's, he's got about six convictions."

As reported in the first paragraph of this opinion, the plea court sentenced Movant to five years' imprisonment. After pronouncing sentence, the plea court examined Movant as required by Rule 29.07(b)(4), Missouri Rules of Criminal Procedure (1998). That exercise included this exchange:

"Q Mr. Cofield, did your attorney make any promises to you as to what the Court would do to you?

A No, sir.

. . . .

Q Did he tell you that the Court may very well give you the five years and ship you?

A Yes, sir."

In the motion court, Movant's lawyer [6] filed an amended motion for post-conviction relief on Movant's behalf. It averred, *inter alia:*

"Movant was told by the [plea] court that his minimum available sentence was one day in jail, and that he might receive a fine in lieu of jail time. In fact, as a persistent offender, Movant could not have received only a fine, and at a minimum was required to be sentenced to forty-eight hours in jail. There was no plea bargain in effect regarding sentencing, and at the time of his plea, Movant was under the impression that 'straight probation' or a fine was a possible sentence."

Based on that averment, the amended motion declared Movant's guilty plea was

6. Lawyer Lyle M. Gregory represented Movant in the motion court and represents him in this appeal.

"involuntary and unknowing" and his conviction and sentence were obtained "without due process of law."

Movant testified in the motion court in support of the amended motion. His testimony included this:

"Q  ... you understood when you entered the plea of guilty that you could receive anything under available range of punishment; is that correct?

A  That's right.

Q  But you had a missimpression [sic] at the time that you entered a plea of guilty about what that available range of punishment was; is that true?

A  That's true.

Q  Because you believed that you might just get a fine; is that correct?

A  Yes, sir.

Q  And you believed that you might simply receive probation and not have to serve your jail time; is that correct?

A  That's correct.

Q  Was it, in part, based on your understanding of the available minimum range of punishment that you faced that you decided to enter your plea of guilty?

A  Yes, sir.

Q  Well, simply put, sir, would you have entered a plea of guilty if you knew that you were going to have to go to jail if you did?

A  No, sir."

Lawyer Ratzlaff[7] was presented as a witness by the State in the motion court. His testimony included this:

"Q  ... Mr. Cofield alleges that he was erroneously informed by counsel that he would receive probation on his plea of guilty. What's your reply to that?

A  ... I concluded that if a jury trial was conducted, that the jury would find him guilty. From that, it went to what the sentencing should be. Mr. Cofield obviously was a persistent offender, and so I told him that the Court would be doing the sentencing and not the jury.

We tried to get some type of a plea agreement from [the prosecutor]. [The prosecutor was] harsh in our opinion, so I told Mr. Cofield that I thought probably the best thing to do would be to enter a plea of guilty and, based upon the presentence investigation, we might hope for a less severe sentence. Mr. Cofield had a few things on his side ... his age, and the last time that he had been sent to department of corrections for this offense, he had not anticipated [sic] in any type of treatment because of his physical condition. We discussed these things ... and we thought that maybe the Court would see things our way and possibly not SIS Mr. Cofield, but at least suspend ... execution of sentencing. But Mr. Cofield knew that there was a 99.99 percent chance that he was going to take a trip to department of corrections.

....

Q  Was the [sic] ever told in no uncertain terms that he would receive probation if he pled guilty?

A  No. No. In fact, he has [sic] told that probation was very, very unlikely."

The motion court found, *inter alia:*

"The first issue is whether the Court incorrectly informed the Movant that the minimum sentence was one day or a fine and that this prejudiced the Movant in that if Movant has [sic] been aware of the forty-eight hour minimum, Movant would not have plead guilty....

Movant was not denied due process of law when his guilty plea was accepted. Both the plea transcript and the eviden-

---

7.  Footnote 4, *supra.*

tiary hearing reveals that Movant's attorney and Movant understood that this was an open plea and that there was a good possibility the Court would sentence him to the maximum. There was no reasonable belief by the Movant that he would get the minimum or probation."

◼ This court's review of the motion court's judgment is limited to a determination of whether the findings and conclusions of that court are clearly erroneous. Rule 24.035(k); *Sams v. State,* 980 S.W.2d 294, 296[1] (Mo. banc 1998).

Movant's theory of error, as this court divines it, is: (a) the plea court told him that he could receive a fine or probation, (b) he believed he could receive a fine or probation, (c) he hoped for one or the other, (d) the minimum punishment the plea court was authorized to impose was forty-eight consecutive hours' imprisonment unless, as a condition of parole or probation, he performed at least ten days of community service, and (e) his mistaken belief that he could receive a fine or "straight probation" rendered his guilty plea involuntary and unknowing, even if his hope for one or the other was unreasonable.

Citing *State v. Hasnan,* 806 S.W.2d 54 (Mo.App. W.D.1991), Movant asserts: "Where a Defendant enters a plea of guilty without knowledge of the range of punishment, his plea is involuntary and unintelligent."

*Hasnan* does not stand for that proposition. There, a defendant asked the plea court to set aside guilty pleas to misdemeanors because the court failed to inform him that "deportation proceedings could result from his guilty pleas." *Id.* at 55. Affirming the plea court's denial of relief, the appellate court held a plea court must inform an accused of the direct consequences of a guilty plea, but not the collateral consequences. *Id.* There was no claim in *Hasnan* that the plea court misinformed the defendant about the "range of punishment."

Movant also proclaims: "[W]here a defendant after guilty plea claims to have had a misimpression about the range of punishment at the time he entered his plea, the test is whether there is a reasonable basis in the record for the defendant to have had such a belief." In support of that proposition, Movant cites *Holt v. State,* 811 S.W.2d 827 (Mo.App. S.D.1991).

*Holt* does not stand for that proposition. The issue there was whether there was a plea agreement whereby the accused "would receive no more than one year of confinement." *Id.* at 829. This court affirmed the motion court's finding that no such agreement existed. *Id.* at 831. Like *Hasnan,* there was no claim in *Holt* that the plea court misinformed the accused about the "range of punishment."

The State argues that Movant, in order to obtain post-conviction relief, had to plead and prove there was a reasonable probability he would have stood trial instead of pleading guilty had the plea court correctly informed him of the mandatory minimum punishment.

Although neither side cites a case with facts identical to those here, this court, for the reasons that follow, agrees with the State.

◼ Where a prisoner who has pled guilty seeks post-conviction relief on the ground that his lawyer rendered ineffective assistance, one of the elements the prisoner must prove is that but for his lawyer's errors, he would not have pled guilty and would have demanded trial. *State v. Roll,* 942 S.W.2d 370, 374–75[8] (Mo. banc 1997), *cert. denied,* 522 U.S. 954, 118 S.Ct. 378, 139 L.Ed.2d 295 (1997). Consequently, had Movant sought post-conviction relief on the ground that *his lawyer* misinformed him about the mandatory minimum punishment, *Roll* would have required Movant to prove that but for the erroneous advice, he would not have pled guilty, but instead would have stood trial.

In *Huth v. State*, 976 S.W.2d 514 (Mo. App. E.D.1998), a prisoner who had pled guilty sought post-conviction relief because neither his lawyer nor the plea court told him he would have to serve eighty percent of his sentence. *Id.* at 516. The motion court denied relief without an evidentiary hearing. *Id.* at 515. The appellate court affirmed. *Id.* at 518. The opinion, as this court understands it, held the failure of the prisoner's lawyer and the plea court to inform the prisoner he would have to serve eighty percent of his sentence did not "automatically undermine the voluntariness of the guilty plea." *Id.* at 517. The opinion said:

> "Movant must show that there is a reasonable probability that but for his counsel's error(s), he would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).
>
> . . . .
>
> There is no allegation that movant would not have pleaded guilty had he been informed that he would have to serve a minimum prison term."

*Id.* at 517–18.

*Huth* seems to impose a different test than *Roll*. *Roll* appears to require a prisoner to prove that but for his lawyer's errors, he would not have pled guilty and would have demanded trial, while *Huth* appears to set a lesser standard, i.e., the prisoner must demonstrate a *reasonable probability* that but for his lawyer's errors, he would not have pled guilty and would have stood trial.

■ It is unnecessary in this opinion to attempt to reconcile *Roll* and *Huth*. It is clear from both that a prisoner seeking post-conviction relief will be unsuccessful unless he demonstrates at least a reasonable probability that but for his lawyer's errors, he would have stood trial instead of pleading guilty.

Logic dictates that the same analysis should apply where a *plea court* misinforms an accused about the mandatory minimum punishment. That appears to have been the analysis in *Huth*, where both the prisoner's lawyer and the plea court failed to tell the prisoner he would have to serve eighty percent of his sentence.

■ Accordingly, this court holds Movant was required to plead and prove there was at least a reasonable probability that had the plea court correctly informed him of the mandatory minimum punishment, he would have refused to plead guilty and instead would have stood trial.

■ The State correctly points out that Movant's amended motion did not aver there was a reasonable probability that if the plea court had correctly informed him of the mandatory minimum punishment, he would have gone to trial instead of pleading guilty.

■ A ground for relief not pled in a motion for post-conviction relief is waived and cannot be raised on appeal. *State v. Kelley*, 953 S.W.2d 73, 92[49] (Mo.App. S.D.1997), *cert. denied*, 522 U.S. 1151, 118 S.Ct. 1173, 140 L.Ed.2d 182 (1998); *State v. George*, 921 S.W.2d 638, 648[36] (Mo. App. S.D.1996). Consequently, Movant cannot prevail in this appeal.

Furthermore, the motion court was not required to believe Movant would have stood trial instead of pleading guilty had the plea court correctly recited the mandatory minimum punishment. *Keating v. State*, 870 S.W.2d 273, 275[2] (Mo.App. S.D.1994). Because of Movant's epic record of DWI convictions, he could not have reasonably believed there was any possibility the plea court would have imposed only a fine or "straight probation." The motion court recognized that reality, finding Movant understood there was "a good possibility" the plea court would sentence him to "the maximum," and there was no reasonable belief by Movant that he would "get the minimum or probation."

The motion court's denial of post-conviction relief is affirmed.

PARRISH and SHRUM, JJ., concur.